IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED HEALTHCARE SERVICES, INC. and UNITED HEALTHCARE COMPANY, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 3:21-cv-1547-L-BT |
| JEREMY ROSSEL, AMIR MORTAZAVI, CARY ROSSEL, ARVIN ZEINALI, YAN NAROSOV, and SEMYON NAROSOV, | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs United Healthcare Services, Inc. and UnitedHealthcare Insurance Company (collectively, "UHC") filed a motion asking this Court to sanction Defendant Cary Rossel under Federal Rule of Civil Procedure 37 for alleged spoliation of evidence and violations of court orders. Mot. (ECF No. 653). Specifically, Plaintiffs request that the Court impose case-ending sanctions against Rossel "by striking his answer and granting UHC default judgment against him." Pls.' R. 37 Mot. 7.[1] Plaintiffs also seek an award of attorney's fees incurred in connection with bringing their Rule 37 Motion. *Id.* at 28. After considering the

---

[1] Citations to the record refer to the CM/ECF page number at the top of each page rather than page numbers at the bottom of each filing.

record and the parties' arguments, and for the reasons and to the extent explained herein, the Court **grants in part** and **denies in part** Plaintiffs' Rule 37 Motion.[2]

### Background[3]

In late November 2016, the government obtained an indictment against two majority owners of Next Health LLC ("Next Health")—Defendant Semyon Narosov and Andrew Hillman—charging them with operating a kickback scheme at Forest Park Medical Center Dallas. *See United States of America v. Alan Andrew Beauchamp, et al.,* No. 3:16-cr-0516 (N.D. Tex). Shortly thereafter, on January 26, 2017, Plaintiffs sued Next Health and affiliated entities for a variety of claims related to a multi-million-dollar healthcare fraud involving alleged false claims seeking payment for lab tests and prescription medications. *See United Healthcare Services, Inc., et al. v. Next Health, LLC, et al.*, No. 3:17-cv-00243 (N.D. Tex.) (hereinafter, "the *Next Health* litigation"), Compl., ECF No. 1. Following the indictment and the commencement of the *Next Health* litigation, members of Next

---

[2] "To determine whether a referred motion for sanctions is dispositive or non-dispositive, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether [Federal Rule of Civil Procedure] 72(a) or 72(b) applies." *Jim S. Adler, P.C. v. McNeil Consultants, LLC,* 2023 WL 2699511, at *14 (N.D. Tex. Feb. 15, 2023) (Horan, J.); *see also Green Hills Dev. Co., LLC v. Credit Union Liquidity Servs., LLC*, No. 3:11-cv-1885-L, ECF No. 373 at 2 (N.D. Tex. Dec. 1, 2016) (Lindsay, J.) (same). The undersigned has authority to enter a nondispositive order granting attorney's fees or other nondispositive sanctions under Federal Rule of Civil Procedure 37(e) or denying a request for what might be considered a dispositive sanction. *See* 28 U.S.C. § 636(b).

[3] Although the parties are familiar with the background facts and procedural history of this case, the Court recounts the following facts to provide context for the Court's ruling.

Health's senior executive team departed the company. As of December 2017, Cary Rossel was the "last man standing" and the "sole representative of Next Health"; he remained as a manager of Next Health for purposes of "administratively wind[ing] down operations." 9/30/2021 Hr'g Tr. 22, 77, App. to Pls.' R. 37 Mot. 168, 171 (Pls.' App.), ECF No. 653-1.

On September 30, 2019, Plaintiffs sought leave to file their First Amended Complaint in the *Next Health* litigation, adding as individual defendants executives associated with Next Health, including Andrew Hillman and Semyon Narosov, as well as Cary Rossel, Jeremy Rossel, Yan Narosov, Arvin Zeinali, and Amir Mortazavi (collectively, the "Executive Defendants"). *Next Health*, No. 3:17-cv-00243, Mot. for Leave to Amend, ECF No. 293. With respect to the Executive Defendants, Plaintiffs sought to add claims for fraud and fraudulent nondisclosure; conspiracy to commit fraud; fraudulent transfers; and violations of 18 U.S.C. § 1962(c). On January 7, 2020, the Court granted Plaintiffs' motion, and Plaintiffs filed their First Amended Complaint. *Next Health*, No. 3:17-cv-00243, First Am. Compl., ECF No. 348.

On November 18, 2020, following a hearing on Plaintiffs' motion for sanctions based on Next Health's repeated violations of discovery orders in the *Next Health* litigation, United States District Judge Ada E. Brown denied Plaintiffs' request for case-ending sanctions but found it appropriate to award reasonable attorneys' fees. *Next Health*, No. 3:17-cv-00243, 11/18/20 Hr'g Trans. 111:14-24, ECF No. 530.

3

After Plaintiffs filed their motion for attorneys' fees in accordance with Judge Brown's decision, Next Health's attorney James S. Bell and his firm assumed responsibility for the discovery deficiencies in the *Next Health* litigation:

> In sum, as counsel for the Entity Defendants, the Firm hereby informs the Court that they take full responsibility for any and all violations the Court has found . . . . The Firm further notes that the Entity Defendants themselves should not be held responsible for any of those violations. In short, the Firm respectfully submits that in this case, it is counsel, not the client, who is responsible for the violation . . . . Accordingly, to the extent that the Court awards monetary or other sanctions in connection with the foregoing motions, the Firm requests that any such sanctions be issued solely against the Firm and not against any of the Entity Defendants.

*Next Health*, No. 3:17-cv-00243, Mot. to Allocate Attorney's Fees Against James S. Bell and Motion to Withdraw as Counsel 3, ECF No. 546.

After considering attorney Bell's admission of fault, as well as other evidence in the *Next Health* litigation record, Judge Brown held Bell and his firm—rather than Next Health—responsible for the numerous discovery abuses and ordered Bell and his firm to pay Plaintiffs $81,651.92 in attorneys' fees. *Next Health*, No. 3:17-cv-00243, Order 13-15, ECF No. 626 ("The record . . . shows that the Court, more than once, directed [Bell] to inform Entity Defendants about the discovery problems and that failure to comply would result in sanctions . . . . The record also demonstrates that Bell, despite rarely appearing at hearings personally, previously acknowledged his responsibility for production problems . . . . Under these circumstances, and given Bell's representations in the motion as an officer of the

Court and the Court's discretion under Rule 37, the Court finds the firm responsible for paying the sanctions award.").

In July 2021, Judge Brown severed Plaintiffs' claims against the Executive Defendants, giving rise to the instant lawsuit. *Next Health*, No. 3:17-cv-00243, Order, ECF No. 613. The Second Amended Complaint filed in the *Next Health* litigation, *see Next Health*, No. 3:17-cv-00243, ECF No. 584, became the live pleading in this severed action. In May 22, 2022, Judge Brown recused herself from the *Next Health* litigation and the matter was reassigned to United States District Judge Brantley Starr. *Next Health*, No. 3:17-cv-00243, ECF No. 683.

In August 2022, Cary Rossel retired from Next Health. App. to Def.'s Resp. Br. (Def.'s Resp. App.) 39-41, ECF No. 660-1. Thereafter, Plaintiffs filed another motion for case-ending sanctions against Next Health in the *Next Health* litigation. On March 21, 2023, Judge Starr granted Plaintiffs' motion. *See United Healthcare Servs., Inc. v. Next Health LLC*, 2023 WL 2589237, at *7 (N.D. Tex. Mar. 21, 2023). Judge Starr explained:

> UHC learned in July 2022 that Next Health, at least four years prior, had disposed of three critical pieces of evidence: (1) its laboratory information database (LabDaq), (2) its pharmacy records management system (Computer Rx), and (3) its central audio recording database containing records of patient conversations (Lightspar). Though Next Health disputes the details—including timing, the totality of the spoliation, and whether Next Health or its attorneys are truly responsible—it does not dispute the fact that it relinquished control of these records and made no copies, and that much, or all, of this evidence is now irretrievable. Nor does it dispute that it concealed these acts from UHC and the Court for the next four years.

*Id.* at *2 (footnotes omitted).

Judge Starr concluded that sanctions were warranted under Federal Rule of Civil Procedure Rule 37(b), because "it is undisputed that Next Health has already disobeyed at least ten discovery orders from three different federal judges, and its spoliation of the LabDaq database is the latest discovery disobedience to come to light." *Id.* at *5. Judge Starr also found sanctions warranted under Rule 37(e), because Next Health intentionally spoliated 'electronically stored information that should have been preserved . . . with the intent to deprive [UHC] of the information's use in the litigation.'" *Id.* He found:

> UHC requested the LabDaq data in 2017, and the Court ordered Next Health to turn it over in 2018. But Next Health surrendered that data to a third party (that destroyed much of it) three months later. Similarly, UHC requested the Lightspar data in 2017, and Next Health closed its Lightspar account soon after, making no effort to retrieve the data before it fell prey to Lightspar's 12-month data retention policy. And Next Health parted with the Computer Rx data just one month after the Court ordered it to identify its databases. The Court finds that Next Health intentionally destroyed this electronic evidence to deprive UHC of its use in litigation.

*Id.* Judge Starr ultimately concluded that dismissal was the appropriate sanction, granted UHC's motion for sanctions, struck Next Health's answer, and granted default judgment for UHC. *Id.* at *6-7. On June 27, 2023, Judge Starr entered a final judgment against Next Health for over $120 million. *See Next Health*, No. 3:17-cv-00243, Final J., ECF No. 750.

Plaintiffs now move the Court under Federal Rules of Civil Procedure 37(e)(2) and 37(b) to levy the same case-ending sanctions against Cary Rossel in

this case as those Judge Starr levied against Next Health for the spoliation of the same three categories of electronically stored information (ESI) in the *Next Health* litigation—the LabDaq data; the Computer Rx data; and the LightSpar recordings. *See* Pls.' Rule 37 Mot. 4, 22.

Cary Rossel opposes the motion, contending, *inter alia*, that Plaintiffs have "failed to meet the substantial burden necessary in order to warrant imposition of the death penalty sanctions they seek." Def.'s Resp. Br. 30, ECF No. 660.

## Legal Standards

### A. Fed. R. Civ. P. 37(e)

The loss of ESI is governed by Federal Rule of Civil Procedure 37(e), which provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A)   presume that the lost information was unfavorable to the party;
>>
>> (B)   instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C)   dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

To apply Rule 37(e) sanctions, "a court must determine that the following four predicate elements exist: (1) there is ESI that should have been preserved; (2) that ESI has been lost; (3) the ESI was lost because of a party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced." *Cleary v. Am. Airlines, Inc.*, 2022 WL 5320126, at \*7 (N.D. Tex. July 22, 2022) (O'Connor, J.).

If these four predicate elements are met, the Court then addresses possible remedies under Rule 37(e)(1) or 37(e)(2), "which have different requirements before sanctions can be imposed and can lead to different sanctions." *Id.* at \*9 (citation omitted). Under these subdivisions, Rule 37(e)

> • allows courts, under Rule 37(e)(2), "to impose certain severe sanctions for the intentional failure of a party to preserve relevant ESI, but only after a finding that the party 'acted with the intent to deprive another party of the information's use in the litigation,'" and

> • "[i]f the court does not find that the spoliating party acted with an intent to deprive[] but determines that the loss of ESI prejudiced another party," allows courts, under Rule 37(e)(1), to "impose lesser sanctions in the form of 'measures no greater than necessary to cure the prejudice.'"

*Id.* (quoting *Castro v. Wal-Mart Real Est. Bus. Tr.*, 645 F. Supp. 3d 638, 646 (W.D. Tex. 2022) (citing Fed. R. Civ. P. 37(e)) (cleaned up).

Under Rule 37(e), a "[a] party suffers prejudice where it cannot present evidence essential to its underlying claim." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 575 (5th Cir. 2020) (cleaned up); *see also Jim S. Adler, P.C. v. McNeil Consultants, LLC*, 2023 WL 2699511, at \*9 (N.D. Tex. Feb. 15, 2023)

(Horan, J.) ("Prejudice under Rule 37(e) means that a party's ability to obtain the evidence necessary for its case has been thwarted.") (cleaned up) (citing cases). Following the 2015 Advisory Committee notes, courts have observed that amended Rule 37(e)(1) "leave[s] to the Court's discretion determining which party has the burden of proving prejudice." *Flores v. AT&T Corp.*, 2018 WL 6588586, at *8 (W.D. Tex. Nov. 8, 2018). Here, the Court determines that the burden to prove prejudice should lie with Plaintiffs. At this stage of the case and in light of the parties' briefing, "placing the burden of proving prejudice on the party that did not lose the information [is not] unfair[.]" *Id.* at *7 (cleaned up).

Under Rule 37(e)(1), after finding prejudice to another party from loss of ESI, "[a] common curative measure courts impose is instructing the jury that it can consider the circumstances surrounding the loss of the ESI." *Adler*, 2023 WL 2699511, at *10 (citation omitted). The Rules Advisory Committee explained in its notes to the 2015 amendments to Rule 37(e) that "[s]ubdivision (e)(2) applies to jury instructions that permit or require the jury to presume or infer that lost information was unfavorable to the party that lost it" and "covers any instruction that directs or permits the jury to infer from the loss of information that it was in fact unfavorable to the party that lost it" but "does not apply to jury instructions that do not involve such an inference." *Fed. R. Civ. P. 37(e)*, advisory committee notes, 2015 amendments. "Courts also routinely award attorney's fees and expenses under Rule 37(e), to cover the time and effort necessary to bring the issue of spoliation before the court." *Adler*, 2023 WL 2699511, at *10 (citation omitted).

Under subsection (e)(2), however, before a court can impose the sanction of an adverse presumption, an adverse instruction to the jury, or default judgment, it must find that the party that caused the loss "acted with the intent to deprive another party of the information's use in the litigation." *Richard v. Inland Dredging Co., LLC*, 2016 WL 5477750, at *4 (W.D. La. Sept. 29, 2016). "[A] finding of negligence or gross negligence" will not suffice to justify "the giving of an adverse-inference instruction." *Id.* (cleaned up) (citing Fed. R. Civ. P. 37(e), advisory committee notes, 2015 amendments). While it is unclear whether a finding of "bad faith" is required under Rule 37(e)(2), the lack of clarity will "generally make no difference" because the Fifth Circuit's only decision citing or applying amended Rule 37(e) laid out the "bad faith" and Rule 37(e)(2) "intent to deprive" standards together, suggesting . . . that, for ESI spoliation, they overlap or even are interchangeable." *Adler*, 2023 WL 2699511, at *12 (citing *Eagan v. Walgreen Co.*, 2022 WL 683636, at *3 (5th Cir. Mar. 8, 2022)) ("Spoliation is 'the destruction or the significant and meaningful alteration of evidence.' Sanctions are only appropriate on a showing of bad faith. Bad faith 'generally means destruction for the purpose of hiding adverse evidence.' For electronically stored information, an adverse inference may be given to the jury 'only upon [a] finding that the party acted with the intent to deprive another party of the information's use in the litigation.' If the trial court concluded there was 'prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice.'") (cleaned up).

"The party seeking the spoliation sanction bears the burden of proof." *Castro*, 645 F. Supp. 3d at 646 (citing *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011) (Boyle, J.)). Although the parties fail to address whether proof by clear and convincing evidence is required or whether proof by a preponderance of the evidence will suffice, this Court agrees with the reasoning of another judge in this district who found, after an in depth analysis of the 2015 amendments to Rule 37(e) and case law, that there is "no basis in Rule 37(e) or governing case law to conclude [a movant seeking sanctions for ESI spoliation] must make any showing on clear and convincing evidence. . . . The Court instead will assess [movant's] required showings under Rule 37(e) against the preponderance of the evidence standard." *Adler*, 2023 WL 2699511, at *14; *see generally Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778 (7th Cir. 2016) (explaining, in the context of sanctions imposed under either Federal Rule of Civil Procedure 37(b)(2) or the court's inherent power, that, "unless the governing statute (or in this case, the rule) specifies a higher burden, or the Constitution demands a higher burden because of the nature of the individual interests at stake, proof by a preponderance of the evidence will suffice").

## B. Fed. R. Civ. P. 37(b)

Rule 37(b)(2) states:

> If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery[,] . . . the court where the action is pending may issue further just orders [that] may include . . . striking pleadings in whole or in part; . . . dismissing the action in

whole or in part; . . . [or] rendering a default judgment against the disobedient party[.]

Fed. R. Civ. P. 37(b)(2)(A)(iii)-(vi).

Federal Rule of Civil Procedure 37(b)(2)(A) "allows a district court to impose a sanction when a party fails to comply with a discovery order, and the court has broad discretion in fashioning its sanction when it does so." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019), *as revised* (June 6, 2019). The Rule provides a range of possible sanctions; but severe sanctions are only warranted when the conduct is willful or in bad faith, the client is the responsible actor, the opposing party was substantially prejudiced, and any lesser sanction would not achieve the requisite deterrent effect. *Id.* at 758-59. Sanctions may also include an award of attorney's fees. "Under Rule 37(b)(2)(C) . . . a party may be personally liable for reasonable expenses including attorney's fees caused by the failure to comply with a discovery order." *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 516 (5th Cir. 1985). "[T]he assessment of attorney's fees is penal in nature; it is designed to penalize those who engage in the charged conduct and to deter others who might be tempted to follow in similar conduct." *Id.* Rule 37 "provides that only those expenses, including fees, caused by the failure to comply may be assessed against the noncomplying party," and that those expenses must be reasonable. *Id.*

## Analysis

Plaintiffs' Rule 37 Motion concerns the same three categories of ESI that Judge Starr considered when he found that Next Health intentionally spoliated ESI

to deprive Plaintiffs of its use in the *Next Health* litigation: (1) its laboratory information database (LabDaq); (2) its pharmacy records management system (Computer Rx); and (3) its central audio recording database containing records of patient conversations (LightSpar). *See* Pls.' Rule 37 Mot. 12, 27. In support of their motion, Plaintiffs "submit[] that because Cary Rossel essentially was Next Health for litigation purposes at all relevant times, and therefore solely responsible for its discovery misconduct, case-ending sanctions should also be levied against him." *Id.* at 4. They contend that "[f]or the six-year history of the Next Health litigation, Cary Rossel *was* Next Health and was responsible as client for all its discovery transgressions." *Id.* at 7 (original emphasis).

Plaintiffs request "severe sanctions against Cary Rossel" under Federal Rules of Civil Procedure 37(b)(2)(A) and 37(e)(2). *Id.* at 22. They assert that "[a]s the Court has already found appropriate regarding Next Health, the Court would be well within its discretion to sanction Cary Rossel under one or both subparts of Rule 37." *Id.* at 22-23.

In opposition, Rossel contends that Plaintiffs have failed to demonstrate that Next Health's disobedience should be imputed to him, individually, under the doctrine of collateral estoppel or any other doctrine. Def.'s Resp. Br. 9-10, 25-27. Insofar as his own actions, Cary Rossel points out that Next Health's former attorney, James Bell, assumed responsibility for the discovery deficiencies and, therefore, Judge Brown ordered Bell, and not Next Health or Rossel, to pay Plaintiffs $81,651.92 in attorney's fees as a sanction. *Id.* at 9-10.  And, Cary Rossel

argues, after Bell's departure, there have been no ongoing failures of production. *Id.* at 10.

Cary Rossel also argues that case-ending sanctions against him are not warranted under Rule 37(e) because he has not committed spoliation of the LabDaq data, the Computer Rx data, or the LightSpar recordings. *Id.* at 11-27. And, he argues, Next Health had no duty to preserve the Computer Rx data or pharmacy-related LightSpar recordings because Plaintiffs did not add any allegations concerning pharmacy operations until this matter had been pending for over two years. He contends that "[i]t is critical to recognize that any transfer of the Computer Rx data . . . occurred almost a year before [Plaintiffs] filed [their] Motion for Leave to File First Amended Complaint, when a duty to preserve pharmacy related data first arose." *Id.* at 21.

Finally, Cary Rossel submits that sanctions under Rule 37(b)(2) are inapplicable because he has not disobeyed any court orders:

> To date, neither the Next Health court nor this Court ha[s] issued any orders directing Rossel to provide or permit discovery. Similarly, no discovery related motions have been filed against him. Because the issuance and subsequent compliance with an order are facial prerequisites to pursuing sanctions under this section [Plaintiffs] cannot move for sanctions against Rossel under 37(b)(2).

*Id.* at 24-25. And, Rossel asserts that even were the Court to find this section applicable, as Judge Brown found, Next Health's counsel was at fault, and Plaintiffs have failed to "demonstrate disobedience on the part of Rossel, instead of Next

14

Health's counsel." *Id.* at 25. Finally, Cary Rossel seeks an award of reasonable attorney's fees incurred in preparing and filing his response brief. *Id.* at 30.

### A. The Court will not impose sanctions against Cary Rossel under the doctrine of collateral estoppel.

The Court first addresses Plaintiffs' invocation of the doctrine of collateral estoppel and related contention that "the issue of whether relevant material has been spoliated, and what sanctions should be imposed, has already been litigated and determined." Pls.' R. 37 Mot. 23. In support, Plaintiffs cite a single case to argue that Cary Rossel "as a nonparty who controlled the original suit will be bound by the resulting judgment." *Id.* at 23 note 14. Cary Rossel contends that the case upon which Plaintiffs rely is distinguishable and Plaintiffs' theories for the application of collateral estoppel to the facts presented here are "unsupported in law and fact and should be disregarded." Def.'s Resp. Br. 26-27.

The Court agrees with Rossel. The sole authority cited by Plaintiffs, *Benson & Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987) (quoting *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864 (5th Cir. 1985)), is inapposite. *Benson* relates to invocations of collateral estoppel by defendants to stop nonparties allegedly in privity or sufficiently close to party plaintiffs from reasserting previously litigated claims. *See id.*

The *Freeman* court, in articulating the control requirement for collateral estoppel, looks to *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974) as an example for applying collateral estoppel against a nonparty. In *Dudley*, the plaintiff

successfully enforced against the defendant, individually, a prior judgment—rendered in the plaintiff's favor—against the defendant's closely held corporation based on a theory of collateral estoppel which found an alter ego relationship between the entity and the defendant. *Id.* at 981. Although Plaintiffs repeatedly assert in their briefing that Cary Rossel and Next Health are one and the same, *see supra*, the Court has not been asked to make a finding, or been provided any evidence to support a finding, that Cary Rossel is the alter ego of the entity Next Health.

In addition, "[a] party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned, *see Hansberry v. Lee*, 311 U.S. [32, 42 (1940)], and (2) either the party understood herself to be acting in a representative capacity [of the nonparty] or the original court took care to protect the interests of the nonparty." *Taylor v. Sturgell*, 553 U.S. 880, 900-01 (2008) (citation omitted).

Here, Plaintiffs have failed to demonstrate that Cary Rossel's interests were adequately represented by Next Health throughout each of the discovery disputes in the *Next Health* litigation. Plaintiffs have presented no evidence that Next Health purported to have an understanding that it was defending those disputes in a representative capacity for Cary Rossel, as opposed to—or in addition to—Next Health.  Further, Cary Rossel was not a party to the *Next Health* litigation for the majority of the disputes.

16

For these reasons, the Court rejects Plaintiffs' motion to impute sanctions entered by Judge Starr in the *Next Health* litigation to Cary Rossel, individually, under the doctrine of collateral estoppel.

### B. Sanctions against Cary Rossel are warranted under Rule 37(e).

Plaintiffs seek case-ending sanctions against Cary Rossel under Federal Rule of Civil Procedure 37(e)(2) for the spoliation of the LabDaq data, the Computer Rx data, and the LightSpar recordings. Specifically, Plaintiffs request that the Court sanction Cary Rossel "by striking his answer and granting UHC default judgment against him." Pls.' R. 37 Mot. 7. Plaintiffs do not address lesser sanctions under Rule 37(e)(1).

The Court first turns to whether Plaintiffs have established that Rule 37(e)'s four predicate elements have been met.

#### 1. *Cary Rossel had a duty to preserve the ESI at issue.*

"A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (citation omitted). Once litigation is reasonably anticipated, a potential party to that litigation "must not destroy unique, relevant evidence that might be useful to an adversary." *CAE Integrated, LLC v. Novak*, 2021 WL 3008296, at *6 (W.D. Tex. June 7, 2021) (citation omitted). The duty to preserve extends to the party's or potential party's employees "likely to have relevant information—the 'key players.'" *Id.* (citing *Ashton*, 772 F. Supp. 2d at 800). "When the duty arises, even

information subject to routine deletion may fall within the duty's reach, requiring that the deletion process be interrupted." *Adler*, 2023 WL 2699511, at \*8 (citation omitted). The duty to preserve evidence is a duty owed to the court, not to the party's potential adversary, hence, spoliation is considered an abuse of the judicial process. *Id.*

"[L]ost or destroyed evidence is relevant if a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Ashton*, 772 F. Supp. 2d at 801 (cleaned up). Plaintiffs persuasively explain how the three categories of ESI are relevant to their claims in this case. *See* Pls.' R. 37 Mot. 12-13 (Labdaq data), 15-19 (Computer Rx data), and 19-20 (LightSpar recordings). And, Cary Rossel does not dispute that the three categories of ESI are relevant. Accordingly, on the record before it, the Court concludes that the ESI at issue is relevant to Plaintiffs' claims against Cary Rossel and the Executive Defendants for fraud and fraudulent nondisclosure; conspiracy to commit fraud; fraudulent transfers; and violations of 18 U.S.C. § 1962(c). *See* Sec. Am. Compl., ECF No. 584.

Cary Rossel also had a duty to preserve the LabDaq data, the Computer Rx data, and the LightSpar recordings. He acknowledges he received a litigation hold notice on March 14, 2017, in his capacity as a NextHealth executive, and by December 2017, he was the "sole representative of Next Health." Resp. to Interrog. No. 5, Pls.' App. 61. Indeed, Rossel does not dispute that he had a duty to preserve much of the ESI at issue. *See* Def.'s Resp. Br. 21, 24 (challenging only that he had

a duty to preserve the Computer Rx data and the pharmacy-related LightSpar recordings).

Specifically, Cary Rossel contends that he should not be subject to sanctions related to the Computer Rx data because Next Health had no duty to preserve those materials before September 30, 2019, when UHC moved to amend its complaint to add pharmacy-related claims, and Next Health parted with this data almost one year prior thereto when it was transmitted to LakePointe Pharmacy. *See id.* at 21. As to the pharmacy-related LightSpar recordings, Rossel asserts that "Next Health had no duty to preserve recordings of customer complaints (to the extent any existed) because it had no notice that other verticals of Next Health would later become involved in the lawsuit." *Id.* at 24. According to Rossel, by the time Plaintiffs sought leave to file their "First Amended Complaint in September 2019[,] any pharmacy related LightSpar recordings would have been irretrievably purged over a year before, when the contract was cancelled by LightSpar after the government raid." *Id.* Cary Rossel's argument is unavailing.

As previously explained, a "party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant" to anticipated litigation. *Guzman,* 804 F.3d at 713. Here, the duty to preserve the Computer Rx data and pharmacy-related LightSpar recordings arose before any data was transmitted to LakePointe and before LightSpar cancelled any contract. The record demonstrates that Cary Rossel was aware, by May 2018 at the latest, that Plaintiffs' case was

expanding to involve Next Health pharmacies. *See Next Health*, No. 3:17-cv-00243, Mot. to Stay ¶ 13, ECF No. 192 ("Plaintiff's Complaint only makes allegations regarding the Entity Defendant's laboratory services. However, United has recently served subpoenas requesting documents from non-party doctors regarding pharmacy services provided by the Entity Defendants or their 'Affiliated Entities.'"); *see also Next Health*, No. 3:17-cv-00243, Subpoena (Ex. C), ECF No. 193. On these facts, the Court finds that Cary Rossel had a duty to preserve the Computer Rx data before he transmitted it to LakePointe Pharmacy and to preserve the pharmacy-related LightSpar recordings before LightSpar cancelled the contract. As of May 2018 at the latest, following the subpoena, he knew or should have known that this data was relevant to pending or future litigation. *See Ashton*, 772 F. Supp. 2d at 800.

Accordingly, Plaintiffs have established that Cary Rossel had a duty to preserve the ESI at issue.

### 2. *Some of the ESI data is lost.*

Cary Rossel does not dispute that, at a minimum, two of the LabDaq databases,[4] the Computer Rx data, and the LightSpar recordings are irretrievably

---

[4] Cary Rossel notes that, on August 19, 2022, Next Health's counsel alerted UHC that some of the LabDaq data had been retrieved from BB Technology. Def.'s Resp. Br. 14. Rossel states that "any recovered LabDaq servers were, as a matter of law, not spoliated" and faults Plaintiffs for not having inspected the retrieved data. *Id.* at 13-15. That some of the LabDaq data was retrieved does not alter that two of the central databases have been irretrievably lost and the LabDaq data for United Toxicology—the largest and most important lab at issue—is among those missing. *See* Pls.' Reply Br. 4, ECF No. 663. The Court notes that on August 29, 2022, Next

gone. Accordingly, on this record, Plaintiffs have established that the ESI at issue has been lost.

### 3. *Cary Rossel failed to take reasonable steps to preserve some of the data.*

Rule 37(e) "recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection." *See* Fed. R. Civ. P. 37(e) advisory committee notes, 2015 amendments. Courts may not issue sanctions under Rule 37(e) for ESI "lost as a result of the routine, good-faith operation of an electronic information system." *Id.* However, "the prospect of litigation may call for reasonable steps to preserve information by intervening in that routine operation." *Id.*

#### a.   The LabDaq Data

On August 8, 2017, Plaintiffs issued discovery requests for all "databases or other documents that track or organize information regarding laboratory testing specimens referred to Next Health." *Next Health*, No. 3:17-cv-00243, Next Health's Resp. to UHC Request Nos. 19-21, Pls.' App. 67-69. Following Plaintiffs' second motion to compel, on July 6, 2018, then presiding United Stated District Judge Karen Gren Scholer ordered Next Health to identify all such databases so

---

Health's counsel informed Plaintiffs that the United Toxicology virtual server—where that data was stored—was completely missing, another physical server "from United Toxicology according to the inventories we have" had no information on it, and two more physical servers would not boot. *See Next Health*, 8/29/22 e-mail from R. Roberts to S. Kerew, ECF No. 717-1. On these facts, the Court rejects Cary Rossel's attempt to fault Plaintiffs for not inspecting any LabDaq data that was recovered and agrees with Plaintiffs that "there is nothing meaningful to inspect." Pls.' Reply Br. 4.

they could be produced. *Next Health*, No. 3:17-cv-00243, 7/6/2018 Hr'g Tr., Pls.'
App. 138-39. Next Health did not identify or produce any of its LabDaq data. In
March 2022, at a Rule 30(b)(6) deposition, Cary Rossel confirmed that those
LabDaqs existed, and intimated that Next Health still possessed them, although he
claimed to have not reviewed them in preparation for his deposition. *Next Health*,
No. 3:17-cv-00243, 3/3/2022 Dep. 62:9-11, 64:1-2, Pls.' App. 115-16. On May 31,
2022, Plaintiffs made a more specific request for "any Next Health laboratory
information system, including but not limited to LabDaq." *Next Health*, No. 3:17-
cv-00243, UHC Request No. 93, Pls.' App. 88. Next Health responded,

> Next Health entrusted the requested LabDaq data to BB Technology
> Consulting, LLC, a data storage contractor, for storage and
> maintenance pursuant to an Equipment and Electronic Data Storage
> and Maintenance Agreement on or about October 23, 2018. Next
> Health has since requested that BB Technology Consulting, LLC
> return the data to Next Health, however BB Technology Consulting,
> LLC has refused to either comply with or respond to said requests. As
> such, Next Health possesses no responsive data.

*Next Health*, No. 3:17-cv-00243, Resp. to UHC Request No. 93, Pls.' App. 88.

In response to Plaintiffs' Rule 37 Motion, Cary Rossel argues that he
"entrusted" data to BB Technology not to intentionally spoliate it, but as a
"substantial measure to preserve" that data. Def.'s Resp. Br. 15. He contends that
"[c]orporate counsel executed an amended Data Storage agreement in October
2020 to prevent the transfer of ownership of the servers to BB Consulting as
anticipated in the original agreement, and to ensure the return of the equipment

to Next Health and/or CHM [Critical Healthcare Management] on request." *Id.*[5] Rossel also provides the Court with the amended Data Storage agreement under which BB Consulting was required to return the electronic devices. *See* First Amendment to Equipment and Electronic Data Storage and Maintenance Agreement, Def.'s Resp. App. 32.

In his Declaration filed in support of his response brief, Cary Rossel states that when he initially "contacted BB Consulting to request the return of the servers, BB Consulting failed to honor its obligations under the amended agreement and return the servers." Decl. of Cary Rossel (Rossel Decl.) ¶ 9, Def.'s Resp. App. 37. He states that on May 31, 2022, after he learned that Plaintiffs were seeking the LabDaq databases, he "again contacted BB Consulting and sought the return of inactive servers per [the amended] agreement [but] BB Consulting ignored [his] requests for return." *Id.* ¶¶ 9, 10, Def.'s Resp. App. 37. Only after BB Consulting was paid "an additional $2,500 did Next Health regain physical possession of the servers." *Id.* ¶ 10, Def.'s Resp. App. 37.

Attached to Cary Rossel's response brief is the Affidavit of Christopher Quinlan, a partner at the law firm of Elliott Sauter, PLLC, retained by CHM in 2018 in connection with the *Next Health* litigation. *See* Aff. of Christopher Quinlan

---

[5] The original contract provided that on its termination, BB Consulting was to take possession of all the physical servers, wipe them, and sell them. The Amendment purchased back the right to the servers so BB Consulting would not be able to wipe the data, and CHM could take back possession of the servers. Def.'s Resp. Br. 15 note 9.

(Quinlan Aff.), Def.'s Resp. App. 15-23. Attorney Quinlan states that following the July search, "CHM found itself in an impossible data preservation situation." Quinlan Aff. ¶ 15, Def.'s Resp. App. 19. "CHM found itself without the facility, the personnel, the funds, or the infrastructure that it had previously used to maintain records in the normal course of business." *Id.* ¶ 16, Def.'s Resp. App. 20. "When CHM became aware that it would likely be evicted from its corporate offices, Mr. Rossel secured access for CHM to alternative facilities to store the CHM electronic devices that had not been taken in the July search [with] BB Consulting[.]" *Id.* ¶ 17, Def.'s Resp. App. 20.

Plaintiffs contend that providing the data to BB Technology was not an effort to preserve, but a spoliative act in violation of Judge Scholer's order. *See* Pls.' Reply Br. 5, ECF No. 663. On the record presented, the Court finds that giving the lab-oriented data and servers to BB Technology in the first instance, more than a year after it was requested in discovery, and several months after it was ordered to be disclosed by Judge Scholer, is not consistent with reasonable preservation efforts. And, that Cary Rossel did not retain copies of the ESI prior to transferring it to BB Consulting undermines Rossel's assertions that he took reasonable steps to preserve the ESI. Finally, although Rossel subsequently made reasonable efforts to retrieve the LabDaq data, and did retrieve some of it, this does alter that the data was initially transferred.

For these reasons, the Court finds that, with respect to the lost LabDaq data, Plaintiffs have established that Cary Rossel failed to take reasonable steps to preserve information.

### b. Computer Rx Data

As to the Computer Rx data, Cary Rossel argues that he transferred the Computer Rx data to LakePointe Pharmacy, not to prevent its use in litigation, but for a reason unrelated to litigation—i.e., to comply with federal and state official directives related to the surrender of licensure by the Next Health pharmacies and requirements regarding the transfer of patient records upon closure. *See* Def.'s Resp. Br. 19. In his Affidavit, Quinlan states that after the FBI raid, on or about July 31, 2018, he and his co-counsel spoke with the federal Drug Enforcement Agency (DEA) and the Texas State Board of Pharmacy.[6] Quinlan Aff. ¶ 9, Def.'s Resp. App. 18. Collectively, they issued three instructions: "1) surrender all DEA registrations and pharmacy licenses; 2) surrender or transfer all controlled substances; and 3) transfer all records from the now unlicensed and unregistered entities to a licensed pharmacy." *Id.* ¶ 11, Def.'s Resp. App. 18. Along with Joe Lewis—the chief compliance officer of the pharmacies and a former chief investigator in the enforcement division of the Pharmacy Board—attorney Quinlan

---

[6] The FBI executed a search warrant at Next Health's offices on July 19, 2018, taking possession of computer servers, laptops, and files related to the company's operations. *Next Health*, No. 3:17-cv-00243, Decl. of Ellen Gray ¶¶ 4-5, ECF No. 193. Approximately one month later, the FBI returned the computer servers. *Id.*, Gray Decl. ¶ 5.

and his law firm assisted in complying with the government's directives. *Id.* ¶ 13, Def.'s Resp. App. 19. Attorney Quinlan states he identified a single pharmacy, LakePointe Pharmacy, willing to take custody of the records. *Id.* ¶ 12, Def.'s Resp. App. 19. Based on conversations with the FBI, it was Quinlan's understanding that the FBI intended to retrieve the transferred records from LakePointe Pharmacy, but counsel did not receive confirmation of that retrieval. *Id.* ¶ 14, Def.'s Resp. App. 19.

Although Plaintiffs question whether Cary Rossel "is being truthful about the way Computer Rx was lost[,]" questions why copies were not made, and suggests that federal and state regulations did not require the transfer of all records, but only records relating to controlled substances and patient records, *see* Pls.' Reply 7, the Court concludes that Plaintiffs have failed to controvert the evidence presented in attorney Quinlan's Affidavit that the transfer of the Computer Rx data was to comply with federal and state official directives. In fact, Plaintiffs do not even address Quinlan's Affidavit.

Because counsel for CHM effectuated the transfer of the Computer Rx data to comply with the DEA's and Pharmacy Board's directives, *see* Quinlan Aff., *supra*, the Court finds that, with respect to the Computer Rx data, Plaintiffs have not established that Cary Rossel failed to take reasonable steps to preserve that information. Because Plaintiffs have failed to satisfy the third predicate element for sanctions under Rule 37(e) with respect to the lost Computer Rx data, no sanction will be considered based on the loss of this data.

### c. *LightSpar Recordings*

In support of his response, Cary Rossel submitted the Affidavit of Robert Bouquet, LightSpar's Chief Financial Officer. Aff. of Robert Bouquet (Bouquet Aff.), Defs.' Resp. App. 13-15. Bouquet states that LightSpar entered into a Master Service Agreement (MSA) with Next Health's predecessor PT Clinics in 2014 and entered into a new MSA with CHM as assignee of Next Health in May 2018. Bouquet Aff. ¶¶ 4, 7, Def.'s Resp. App. 14. Under the original MSA and new MSA, "LightSpar provided call recording services retained for 30-days pursuant to the standard retention policy." Bouquet Aff. ¶ 7, Def.'s Resp. App. 14. After CHM fell behind on its payments, Bouquet "sent a termination letter to CHM on August 28, 2018, cancelling the MSA and related services orders based on CHM's failure to meet its payment obligations under the MSA." Bouquet Aff. ¶ 11, Def.'s Resp. App. 15. "Any call recordings in the custody of LightSpar at the time of the termination were irretrievably purged pursuant to the standard LightSpar retention policy." Bouquet Aff. ¶ 12, Def.'s Resp. App. 15.

A party has a duty to suspend policies that lead to the deletion of relevant evidence. *See, e.g., Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.") (citation omitted). Here,

even if LightSpar retained recordings initially for only 30 days,[7] Next Health was required to amend that short retention policy from the moment any litigation with Plaintiffs was reasonably anticipated, at the latest here by January 2017, when Plaintiffs filed their lawsuit against Next Health. Cary Rossel never sought to amend the retention policy after he became the sole representative of Next Health. Instead, in May 2018, Cary Rossel renewed the MSA and failed to arrange for longer or indefinite retention. *See* May 10, 2018 MSA, Def.'s Resp. App. 71-74.

For these reasons, the Court finds that, with respect to the lost LightSpar recordings, Plaintiffs have established that Cary Rossel failed to take reasonable steps to preserve information.

### 4. The ESI cannot be restored or replaced.

It is undisputed that, at a minimum, two of the LabDaq databases and the LightSpar recordings are irretrievably gone. And, while Cary Rossel suggests that Plaintiffs have been invited to inspect the portion of the LabDaq data that has been retrieved, and might be able to recover something, the Court has already addressed and rejected this argument. *See supra* note 4.

---

[7] Cary Rossel initially represented that LightSpar recordings had a one-year retention period (*see Next Health*, No. 3:17-cv-00243, Joint Report 7, ECF No. 706), but clarifies in his response brief that the recordings were on a 30-day retention period. *See* Def.'s Resp. Br. 23.

### 5. *Cary Rossel did not intentionally deprive Plaintiffs of relevant ESI; nor did he act in bad faith.*

The Court has concluded that the LabDaq data and Light Spar recordings, which could have and should have been preserved through reasonable measures, have been lost and cannot be recovered. As such, the Court must assess whether Plaintiffs have met their burden of showing that Cary Rossel intended to deprive Plaintiffs of this ESI or acted in bad faith.

"As a general matter, litigation-ending sanctions are reserved for the most heinous of scenarios." *Calsep A/S v. Dabral*, 84 F.4th 304, 315 (5th Cir. 2023) (citing *Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976)). "Therefore, a court must consider whether some lesser sanction would[] substantially achieve[] the desired deterrent effect without ending the case." *Id.* (cleaned up).

The 2015 Advisory Committee Notes to Rule 37(e)(2) instruct federal courts to "exercise caution . . . in using the measures specified in [Rule 37](e)(2)." Fed. R. Civ. P. 37(e), advisory committee's notes to 2015 amendment. To impose the sanctions authorized by Rule 37(e)(2), the 2015 amendment requires a court to find that the party who lost ESI acted with "intent to deprive another party of the information." *Id.* The 2015 advisory committee notes to Rule 37(e) explicitly reject prior caselaw that permitted an adverse-inference instruction "on a finding of negligence or gross negligence." *Id.*

Under Rule 37(e)(2), the Court cannot infer that a party acted with the intent to deprive another party of the ESI's use in the litigation based only on "evidence that amounts to what is required to satisfy the four predicate elements – that is, showing that ESI that should have been preserved has been lost because of a party's failure to take reasonable steps to preserve it and now cannot be restored or replaced through additional discovery." *Adler*, 2023 WL 2699511, at \*29 (cleaned up).

Plaintiffs contend that, based on Judge Starr's finding that Next Health spoliated ESI in bad faith and with the intent to deprive UHC of its use in litigation—*see United Healthcare Servs.*, 2023 WL 2589237, at \*5-7—this Court should similarly find that Cary Rossel, as Next Health's "last man standing," acted in bad faith and with intent to deprive Plaintiffs of the ESI in this litigation. *See* Pls.' R. 37 Mot. 4, 19, 21, 27-28.

Here, however, Cary Rossel has provided evidence with his response brief for the Court to consider in its evaluation of the matter that was not part of the record in the *Next Health* litigation.

With regard to the LabDaq data, in his Affidavit, attorney Quinlan states that "[t]he transfer of electronic devices to BB Consulting was intended to, and did in fact, preserve evidence to facilitate the companies' cooperation with the government, and to allow production of materials in response to subsequent government requests." Quinlan Aff. ¶ 18, Def.'s Resp. App. 20. He also states:

> Leaving the electronic devices at CHM's corporate offices would not have preserved them. Following termination of CHM's lease, the landlord seized and sold the equipment that was left behind. Based on my knowledge of the events and circumstances surrounding the transfer of electronic devices to BB Consulting, *I am confident that the transfer was not motivated in any part by a desire to conceal or spoliate evidence in the United litigation.*

*Id.* ¶ 19, Def.'s Resp. App. 21 (emphasis added).

In his Declaration submitted in support of his response brief, Cary Rossel states:

> At no time have I intentionally destroyed any information related to Next Health with an intent to prevent its discovery, nor am I aware of any unintentional destruction of such information. Instead, I tried to preserve the data and information. In fact, I believe any such information will help establish I have not knowingly engaged in any of the conduct [Plaintiffs have] accused me of.

Rossel Decl. ¶ 13, Def.'s Resp. App. 38.

In addition, the record shows that LightSpar, and not Cary Rossel, closed the account leading to the loss of the recordings because of CHM's inability to maintain payment obligations. *See* Bouquet Aff. ¶ 11, Def.'s Resp. App. 15. Although Cary Rossel failed to amend the 30-day retention policy in the MSA at a time when litigation was reasonably anticipated—*see* May 10, 2018 MSA, Def.'s Resp. App. 71-74—this is not evidence of intent to deprive Plaintiffs of the use of ESI in litigation or bad faith.

Moreover, most of what Plaintiffs point to as support for a finding of bad faith and "intent to deprive" under Rule 37(e)(2) overlaps with what they were required to show to establish that the four predicate elements exist.

31

Here, were the Court to find Quinlan's and Bouquet's testimony to be not credible—notwithstanding that Plaintiffs do not even address their affidavits—or to find Cary Rossel not credible, arguably there would be some evidence for a reasonable person to conclude that Cary Rossel intentionally destroyed the ESI. But a reasonable person could likewise find, on the evidence set out by this Court, that Cary Rossel did not intentionally destroy this ESI to deprive Plaintiffs of its use in litigation. Therefore, the Court finds that Plaintiffs did not satisfy their burden of proof under Rule 37(e)(2), and it will not impose case-ending sanctions. However, for the reasons stated below, because the Court finds that Plaintiffs have been prejudiced by Cary Rossel's failure to preserve ESI, it will impose curative measures.

### 6. *The loss of ESI prejudiced Plaintiffs.*

Although the Court does not find that Cary Rossel acted with the required intent to deprive or bad faith as to the lost LabDaq data and LightSpar recordings, Plaintiffs have shown that the loss of this ESI prejudiced them, thereby allowing the Court, under Rule 37(e)(1), to impose lesser sanctions in the form of "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

Plaintiffs contend they have been "substantially prejudiced" by the loss of the ESI. *See* Pls.' R. 37 Mot. 25. They argue, among other things, that

> [w]hile UHC possesses testimonial information from former executives that Next Health manipulated data before submitting claims to UHC, the original, unadulterated data is now not available to unimpeachably identify certain claims that were infected by those known misrepresentations. UHC has had to litigate for six years

without access to information it specifically requested, and which is centrally relevant to this ongoing case.

*Id.*

Notably, Cary Rossel does not address prejudice in his response brief. This is not an instance in which Plaintiffs have offered no "articulated reason as to why the lost ESI affects [their] presentation of proof or is prejudicial." *Flores,* 2018 WL 6588586, at *8. For all the reasons that Plaintiffs explain in their Rule 37 Motion and their reply, the Court finds that Plaintiffs have met their burden to show that the loss of the LabDaq data and LightSpar recordings has caused them to be unable to present evidence essential to their claims and that testimony from former executives is insufficient to make up for this loss.

### 7. *Case-ending sanctions are not appropriate for the loss of ESI.*

Because the Court does not find that Cary Rossel acted with bad faith or the intent to deprive Plaintiffs of the lost ESI's use in litigation, the Court concludes that it cannot recommend sanctioning Rossel by striking his answer and entering a default judgment against him. Plaintiffs' reasoning for case-ending sanctions does not apply where the Court has not found that Cary Rossel acted in bad faith or with the intent to deprive Plaintiffs of the lost ESI's use in this litigation.

Here, the Court determines that the appropriate sanction in this case under Rule 37(e)(1) is to "allow[ ] the parties to present evidence to the jury concerning the loss and likely relevance of [the lost LabDaq data and LightSpar recordings] and for the district judge to instruct the jury that it may consider that evidence,

along with all the other evidence in the case, in making its decision." Fed. R. Civ. P. 37(e), advisory committee's notes to 2015 amendments. As another court recently explained, "[o]ther [c]ourts have imposed similar sanctions when the non-spoliating party cannot show an 'intent to deprive,'" and this measure serves to cure the prejudice to Plaintiffs by having "'the jury be able to determine the weight and importance of what the [lost ESI] may have shown[.]'" Adler, 2023 WL 2699511, at *40 (quoting Wilson v. HH Savannah, LLC, 2022 WL 3273714, at *2 (S.D. Ga. July 28, 2022)) (cleaned up); see also Thomas Y. Allman, Dealing with Prejudice: How Amended Rule 37(e) Has Refocused ESI Spoliation Measures, 26 Rich. J. L. & Tech. 1 (2020) (appendix collecting decisions).

"At this pretrial stage, however, the Court declines to rule on the precise scope of admissible evidence regarding the [loss of the ESI], and the content of the jury instruction." Adler, 2023 WL 2699511, at *40 (cleaned up). "Courts have noted that this approach affords the district judge with flexibility to determine the scope of the spoliation evidence to be presented at trial, including any argument that may be made to the jury on this issue, and to craft any related jury instructions on a full evidentiary record." Id. (cleaned up). For example, the district judge may wish to instruct the jury that Cary Rossel had a duty to preserve the ESI, that the spoliated ESI was relevant to the claims in the case, that Cary Rossel failed to take reasonable steps to preserve the spoliated ESI, and that the spoliated ESI cannot be recovered. See Fed. R. Civ. P. 37(e)(1).

The Court will also order Cary Rossel to pay Plaintiffs the reasonable attorney's fees and costs that they incurred in having their attorneys draft and file the Rule 37 Motion and the reply and appendices in support. The Court finds this is an appropriate measure that is no greater than necessary, under the circumstances, to cure the prejudice that the Court has found that the loss of the LabDaq data and LightSpar recordings has caused Plaintiffs. Plaintiffs must, no later than **April 20, 2024**, file an application establishing the amount of the reasonable attorney's fees and costs to be awarded. The fee application must be supported by documentation evidencing the "lodestar" calculation, including affidavits and detailed billing records, and citations to relevant authorities and must set forth the itemized number of hours expended in connection with the recoverable attorney's fees described above as well as the reasonable rate(s) requested. *See generally* *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002).

These curative measures are tailored to remedy the loss and Plaintiffs' prejudice without providing a windfall to Plaintiffs. The Court is mindful that this result is not what either party requested. After balancing the facts, law, and equities, however, the Court determines that neither Plaintiffs' request for case-ending sanctions nor Cary Rossel's request for no sanctions is appropriate. The sanctions imposed are tailored to Cary Rossel's spoliation while attempting to remedy the prejudice inflicted upon Plaintiffs. The sanctions imposed allow the case to proceed on the merits but also inform the ultimate fact finders that they

35

can consider the evidence of Cary Rossel's discovery failures in reaching their conclusions on the merits.

### C. Sanctions are not warranted under Rule 37(b).

Unlike Rule 37(e), imposition of sanctions under Rule 37(b) requires the prior violation of a court order. By its terms, Rule 37(b)(2)(A) is limited to failures "to obey an order to provide or permit discovery." As to Cary Rossel's spoliation of ESI, because the Court has ordered sanctions pursuant to Rule 37(e)(1), the Court will not stretch Rule 37(b) to cover the spoliation of ESI at issue here.

Alternatively, even were the Court to conclude that Cary Rossel, rather than attorney Bell, failed to comply with court orders, a "court has broad discretion in fashioning its sanction." *Calsep A/S*, 84 F.4th at 310 (citation omitted). Here, the Court would impose the same sanction as it imposed for Cary Rossel's spoliation of ESI under Rule 37(e)(1), *supra*. And, Plaintiff has not shown that a "lesser sanction" than litigation ending sanctions would have "substantially achieved the desired deterrent effect without ending the case." *Id.* (cleaned up).

For these reasons, the Court declines to impose sanctions under Rule 37(b). Even were it to impose sanctions under Rule 37(b), they would be duplicative of those already imposed for Cary Rossel's spoliation of ESI.

## Conclusion

Based on the foregoing, the Court **denies in part** and **grants in part** Plaintiffs' Rule 37 Motion.

**SO ORDERED.**

March 21, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE