IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED HEALTHCARE SERVICES, INC. and UNITED HEALTHCARE COMPANY, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 3:21-cv-1547-L-BT |
| JEREMY ROSSEL, AMIR MORTAZAVI, CARY ROSSEL, ARVIN ZEINALI, YAN NAROSOV, and SEMYON NAROSOV, | § § § § § § | |
| Defendants. | § § | |

## OMNIBUS DISCOVERY ORDER

This case has been referred to the undersigned for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sam A. Lindsay. *See* ECF No. 672. Plaintiffs United Healthcare Services, Inc. and UnitedHealthcare Insurance Company have filed numerous motions to compel discovery as well as a motion for protective order, and certain Defendants—Cary Rossel, Jeremy Rossel, and Amir Mortazavi—have filed motions to compel discovery and other discovery-related motions. After careful consideration of the parties' arguments and the applicable law, for the reasons stated herein, the Court:

1. GRANTS in part and DENIES in part Mortazavi's Motion to Compel (ECF No. 631);

2. GRANTS Cary Rossel's Motion to Compel Production of Settlement Agreements (ECF No. 649);

3. DENIES Cary and Jeremy Rossel's Motion to Compel Production of Documents (ECF No. 675);

4. GRANTS in part and DENIES in part Plaintiffs' Motion to Compel Production of Documents by Cary Rossel and Third-Party Critical Healthcare Management, LLC (ECF No. 664);

5. GRANTS in part and DENIES in part Plaintiffs' Motion for Protective Order (ECF No. 666);

6. GRANTS Plaintiffs' Motion to Compel Production of Financial Documentation from Cary Rossel, Jeremy Rossel, and Amir Mortazavi (ECF No. 674);

7. DENIES Plaintiffs' Motion to Compel Production of Next Health Emails (ECF No. 676);

8. DENIES without prejudice Plaintiffs' Motion to Compel Third-Party Eric Narosov to Provide Deposition Testimony and Produce Documents (ECF No. 669);

9. DENIES as moot Mortazavi's Request to Set a Hearing and/or Obtain a Ruling on Motion to Compel (ECF No. 656); and

10. DENIES as unnecessary Mortazavi's Motion to Extend the Discovery Deadline (ECF No. 671).

And to the extent the Court has ordered production of any discovery, that order is STAYED pending the Court's resolution of Mortazavi's motion to stay (ECF No. 724) and the parties' summary judgment motions (ECF Nos. 679, 681).

## Background

While the parties are familiar with the factual and procedural history of this litigation, the Court recounts the following background facts to provide context for the Court's rulings:

In January 2017, Plaintiffs sued Next Health LLC and several affiliated entities including laboratories (collectively, "Next Health"), as well as Erik Bugen and Kirk Zajak, for a variety of claims related to an alleged multi-million-dollar healthcare fraud scheme. *See United Healthcare Services, Inc., et al. v. Next Health, LLC, et al.*, 3:17-cv-00243 (N.D. Tex.) (hereinafter, the "*Next Health* case"), Compl., ECF No. 1. Succinctly stated, Plaintiffs alleged that Next Health defrauded them of over $100 million by submitting false and misleading claims seeking payment for lab tests and prescription medications, which Next Health accomplished through a network of shell companies and marketers that funneled kickbacks to doctor referral sources. *Id.*, *passim*. Plaintiffs also alleged that Andrew Hillman and Semyon Narosov controlled Next Health, and that both Hillman and Narosov had been indicted for their roles in laundering money derived from healthcare fraud. *Id.* ¶¶ 3, 7, 73.[1]

In 2019, Plaintiffs filed their First Amended Complaint in the *Next Health* case, adding numerous individual defendants, including Mike Austin, Nick Austin,

---

[1] In 2018, Andrew Hillman and Semyon Narosov pleaded guilty to using Next Health to launder money derived from healthcare fraud. *See generally* Plea Agreement, *U.S. v. Semyon Narosov, Andrew Hillman*, No. 3:18-CR-0475-JJZ, 2018 WL 11193541, ECF Nos. 8, 9 (N.D. Tex. Sept. 24, 2018).

Josh Daniel, Josh Ihde, Cary Rossel, Jeremy Rossel, Yan Narosov, Arvin Zeinali and Amir Mortazavi (the "Executive Defendants"), as well as Andrew Hillman and Semyon Narosov, multiple pharmacies, and Pioneer Laboratories, LLC, the sole owner of which was Jeffrey Wasserman. *Next Health*, 3:17-cv-00243, First Am. Compl. ¶¶ 29-30, 31-33, 35-40, 43, ECF No. 348.

In 2021, Plaintiffs filed their Second Amended Complaint in the *Next Health* case, in which they alleged that the Executive Defendants owned and operated Next Health and affiliated entities and used them to engineer and execute a complex scheme to defraud health plans by submitting claims with false, misleading, and/or incomplete information to Plaintiffs, which were intended to trick Plaintiffs into paying exorbitant amounts for laboratory testing services and pharmaceutical products. *Next Health*, 3:17-cv-00243, Sec. Am. Compl., *passim*, ECF No. 584. Plaintiffs asserted claims for (1) fraud; (2) conspiracy to commit fraud; (3) negligent misrepresentation; (4) money had and received; (5) unjust enrichment; (6) violations of the Texas Theft Liability Act; (7) sham to perpetrate fraud; (8) declaratory relief; (9) injunctive relief; (10) false association under the Lanham Act; (11) fraudulent transfers; and (12) violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c). *Id.* ¶¶ 360-513.

In July 2021, presiding United States District Judge Ada Brown severed Plaintiffs' claims against the Executive Defendants and Semyon Narosov from the

*Next Health* case, giving rise to the instant lawsuit. *Next Health*, 3:17-cv-00243, Order, ECF No. 613.

In May 2022, Judge Brown recused herself from the *Next Health* case, as well as this severed case against the Executive Defendants and Semyon Narosov. The *Next Health* case was reassigned to United States District Judge Brantley Starr. *See Next Health*, No. 3:17-cv-00243, ECF No. 683. The severed case against the Executive Defendants and Semyon Narosov was reassigned to United States District Judge Sam A. Lindsay. *See* ECF No. 621.

In the *Next Health* case, Plaintiffs and Kirk Zajak resolved their dispute and dismissed with prejudice all claims against Zajak. *Next Health*, 3:17-cv-00243, Order of Dismissal, ECF No. 687. And on March 21, 2023, United States District Judge Brantley Starr granted Plaintiffs' motion for case-ending sanctions against Next Health and its collective of licensed laboratories and pharmacies, struck those parties' pleadings, and granted default judgment against them. *See United Healthcare Servs., Inc. v. Next Health LLC*, 2023 WL 2589237, at *7 (N.D. Tex. Mar. 21, 2023). Judge Starr treated the motion as unopposed, noting that Next Health provided a one-page, "limited response" which stated only that "[Next Health] has no representatives or employees who can assist or direct any actions of counsel [which] ethically precludes . . . the formation of any substantive response." *Id.* On June 27, 2023, Judge Starr entered a final judgment in Plaintiffs' favor against Next Health for over $120 million. *See Next Health*, 3:17-cv-00243, Final J., ECF No. 750.

Meanwhile, in this case, Plaintiffs settled their claims with, among others, Mike Austin, Nick Austin, Josh Daniel, and Josh Ihde, and dismissed with prejudice all claims against those defendants. *See* ECF Nos. 620, 647. Thus, the remaining Executive Defendants are Cary Rossel, Jeremy Rossel, Amir Mortazavi, Arvin Zeinali, and Yan Narosov. Semyon Narosov also remains a defendant. The Second Amended Complaint, originally filed in the *Next Health* case, is the live pleading in this action. *See Next Health*, 3:17-cv-00243, Sec. Am. Compl., ECF No. 584.

The deadlines for (i) completing discovery, (ii) filing motions to compel discovery or impose sanctions against a party for failing to comply with discovery requests, and (iii) filing dispositive motions have expired. *See* Fifth Am. Sch. Order ¶¶ 2, 6, ECF No. 662. Defendants Cary Rossel and Jeremy Rossel timely filed a Motion for Summary Judgment (ECF No. 679), and Plaintiffs timely filed a Motion for Partial Summary Judgment Against Amir Mortazavi and Arvin Zeinali (ECF No. 681). The summary judgment motions were fully briefed as of January 19, 2024. *See* ECF No. 697.

The Court granted Mortazavi leave to file a motion to stay this lawsuit based on the criminal indictment recently returned against him and others. *United States of America v. Mortazavi, et al.*, No. 3:24-CR-0049-S. That motion (ECF No. 724) will be ripe for determination no later than April 9, 2024. ECF No. 723.

## Legal Standards

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court.

> *Scope in General.* Unless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Under Rule 26(b)(1), . . . discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573 (N.D. Tex. 2018) (Horan, J.) (citation omitted) (cleaned up). "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any party's claim or defense is also important in resolving the issues." *Id.* (citation omitted). Relevance is interpreted broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 352 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). The party

opposing discovery bears the burden of showing why the discovery sought is not relevant or is otherwise objectionable. *Mir v. L-3 Commc'ns Integrated Sys., L.P., 319 F.R.D. 220, 224 (N.D. Tex. 2016)*.

A court "must limit the frequency or extent of discovery otherwise allowed" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(b)(1) applies to nonprivileged matter, and a party withholding discovery on privilege grounds, "'must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *Zenith Ins. Co. v. Tex. Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 161 (N.D. Tex. 2018) (quoting Fed. R. Civ. P. 26(b)(5)(A)).

As to requests for production or inspection, Federal Rule of Civil Procedure 34(a)(1) provides that a party may serve on any other party a request within the scope of Rule 26(b): "(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information . . . or (B) any designated tangible things." Fed.

R. Civ. P. 34(a). In response to a Rule 34(a) request, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to file a motion to compel production of documents after having made a good-faith effort to resolve the dispute by conferring first with the other party. Fed. R. Civ. P. 37(a). But, a court may decline to compel, and, at its option or on motion, "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden . . ., including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

## Analysis

1. <u>The Court GRANTS in part and DENIES in part Mortazavi's Motion to Compel (ECF No. 631).</u>

Mortazavi moves to compel Plaintiffs to respond to his First Request for Production of Documents (RFP) Nos. 3, 10, and 11.

   *a. RFP No. 3*

RFP No. 3 seeks:

> All Documents and Communications exchanged between You and any law-enforcement agency or any governmental agency (either federal or state, including but not limited to the Department of Justice, the Federal Bureau of Investigations, and/or Office of Inspector General) Concerning Next Health, including but not limited to Mortazavi.

Mortazavi's Mot. to Compel, Ex. A at 16 (RFP No. 3), ECF No. 631.[2]

Plaintiffs object that the documents requested are irrelevant to Plaintiffs' claims against Mortazavi and his defenses thereto; that the request is not proportional to the needs of the case because it is not limited in time; that references to "Next Health" are vague since the term could refer to any number of intertwined businesses; and that the documents to be produced are protected by a law enforcement privilege. *Id.*, Ex. B at 21-22 (Obj. & Resp. to RFP No. 3). Notwithstanding, Plaintiffs offered to provide all non-privileged material from Plaintiffs' Special Investigations Unit (SIU) investigatory files in the *Next Health* case, information they previously have made available. *Id.* at 22.

The Court SUSTAINS Plaintiffs' objection that RFP No. 3 is not proportional to the needs of the case because it is unlimited in time. Mortazavi is not entitled to documents from outside the relevant period, and this request lacking temporal scope is overly broad, unduly burdensome, and not proportionate. *See, e.g., Talley v. Spillar*, 2017 WL 9288622, at *4 (W.D. Tex. Mar. 31, 2017) (placing temporal limitation on requests). Rather than quash the subject request, the Court narrows the temporal scope of the response to January 1, 2011, to the present. This general

---

[2] Citations to the record refer to the CM/ECF page number at the top of each page rather than page numbers at the bottom of each filing.

limitation of the temporal scope strikes the proper balance in light of the claims and defenses in this action. *See Jolivet v. Compass Grp. USA, Inc.*, 2021 WL 90110, at *8 (N.D. Tex. Jan. 11, 2021) ("[C]ourts maintain discretion to compel discovery covering different time periods based upon the discovery's relevance to each parties' claims and defenses.").

The Court also SUSTAINS Plaintiffs' objection that the term "Next Health" is vague. A "party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity"; "must explain the specific and particular way in which a request is vague"; "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories"; "[i]f necessary to clarify its answers, . . . may include any reasonable definition of the term or phrase at issue"; and, "[should] attempt to obtain clarification [by conferring with the requesting party] prior to objecting on this ground." *Heller v. City of Dallas*, 303 F.R.D. 466, 483, 491-92 (N.D. Tex. 2014) (cleaned up).

From what the Court can discern, Plaintiffs have satisfied these steps and their objection to RFP No. 3 concluded with an offer to interpret "Next Health" to comprise "the entity defendants" in the *Next Health* case—a definition comprising Next Health LLC, as well as the lab and pharmacy entities owned by Next Health LLC. *See* Mortazavi's Mot. to Compel, Ex. B at 21 (Obj. & Resp. to RFP No. 3). The Court agrees with Plaintiffs that "[a]ny other definition of 'Next Health' in this context would be unwieldy." Pls.' Resp. Br. 3, ECF No. 644. Per the pleadings, Next Health was a large and shifting enterprise that owned numerous subsidiary

entities—including licensed laboratories, licensed pharmacies, unlicensed shell companies designed to funnel kickbacks to referring providers, various "syndicate" entities, holding companies, and other "non-operational" entities. *See* Sec. Am. Compl. ¶ 54 (containing organizational chart). Rather than quash the subject request, the Court defines "Next Health" to comprise "the entity defendants" in the *Next Health* case, as alleged in the Second Amended Complaint.

Subject to the foregoing, the Court OVERRULES Plaintiffs' remaining objections to RFP No. 3 based on relevance and the law enforcement privilege.

The Court finds that the information Mortazavi is seeking falls within the broad scope of discovery under Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(1) (providing for discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). In support of his Motion to Compel, Mortazavi argues that "[b]y electing to sue [him] for a generalized conspiracy, one by which they assign to him responsibility for the conduct of his associates, Plaintiffs have put at issue all of the conduct from all of the actors about which they have complained." Mortazavi's Mot. to Compel 5. The Court finds that the materials RFP No. 3 seeks have relevance to the claims asserted against Mortazavi in the Second Amended Complaint and are important to (i) resolving Plaintiffs' claims of conspiracy, coordination, and planning—all of which are significant to the intent element of several claims brought against Mortazavi, and (ii) allowing him to marshal a defense.

The Court also overrules Plaintiffs' objection based on the law enforcement privilege. Plaintiffs assert they "primarily object[] to production because the responsive documents relate to ongoing criminal investigations and are, therefore, protected by the law enforcement privilege." Pls.' Resp. Br. 4. Mortazavi contends that "Plaintiffs' reliance on law enforcement privilege fails [because Plaintiffs] . . . are not law enforcement agents or agencies and have no right to assert the privilege." Mortazavi's Mot. to Compel 6. The Court agrees.

The Fifth Circuit recognizes the existence of a law enforcement privilege. *See In re United States Dep't of Homeland Security*, 459 F.3d 565, 569-70 (5th Cir. 2006). It defines the law enforcement privilege as "a qualified privilege protecting investigative files in an ongoing criminal investigation." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). In assessing the privilege's application, the district court must balance the government's interest in confidentiality against the litigant's need for the documents at issue. *In re Homeland Security*, 459 F.3d at 570.

Plaintiffs fail to provide the Court with any legal authority supporting their contention that, as a private party, they may invoke the law enforcement privilege to withhold relevant documents in discovery. And, what little the Court has found based on its independent research is to the contrary. *See, e.g.,* D. Greenwal, et al., Privilege for information obtained for law enforcement purposes, 2 *Testimonial Privileges* § 9:18 (3d ed.) ("The qualified privileges relating to law enforcement may be asserted only by the government, and not by private parties); *U.S. v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (identifying the law enforcement

investigative privilege as one of the privileges "exclusively reserved for the Government"); *In re M & L Business Mach. Co., Inc.*, 161 B.R. 689, 693-94 (D. Colo. 1993) (citing cases). Absent Plaintiffs' citation to any case authority, the Court declines to extend the law enforcement privilege to a private party under the circumstances presented.

> ### b.  RFP No. 10

RFP No. 10 seeks "[a]ll Documents and Communications supporting [Plaintiffs'] claims against Mortazavi." Mortazavi's Mot. to Compel, Ex. A at 16-17 (RFP No. 10).

Plaintiffs contend that Mortazavi "already has the documents in [their] possession that support [their] claims against him." Pls.' Resp. Br. 7. In reply, Mortazavi states that "[i]f there are no documents left, there are no documents left." Reply Br. 4, ECF No. 648. Accordingly, the Court OVERRULES as moot Plaintiffs' objection to RFP No. 10.

To the extent Plaintiff's objection is not moot, the Court SUSTAINS Plaintiffs' objection that this Request is not reasonably limited in time or scope. Mortazavi's Mot. to Compel, Ex. A at 16-17 (RFP No. 10). As another judge in this district has explained:

> Federal Rule of Civil Procedure 34(b) provides that a request for production or inspection "must describe with reasonable particularity each item or category of items to be inspected" or produced. Fed. R. Civ. P. 34(b)(1)(A). The test for reasonable particularity is whether the request places the party upon "reasonable notice of what is called for and what is not." Therefore, the party requesting the production of documents must provide sufficient information to enable [the party to

whom the request is directed] to identify responsive documents. The goal is that the description be sufficient to apprise a man of ordinary intelligence which documents are required.

This test, however, is a matter of degree depending on the circumstances of the case. But, although what qualifies as reasonabl[y] particular surely depends at least in part on the circumstances of each case, a discovery request should be sufficiently definite and limited in scope that it can be said to apprise a person of ordinary intelligence what documents are required and [to enable] the court . . . to ascertain whether the requested documents have been produced. A Rule 34(a) request made with reasonable particularity does not require a reasonable attorney or party attempting to properly respond to ponder and to speculate in order to decide what is and what is not responsive.

All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A). *For example, [b]road and undirected requests for all documents which relate in any way to the complaint do not meet Rule 34(b)(1)(A)'s standard. Similarly, [a] request for "all documents and records" that relate to "any of the issues," while convenient, fails to set forth with reasonable particularity the items or category of items sought for [the responding party's] identification and production of responsive documents.*

Based on these rules, this Court has, for example, determined that an interrogatory asking a defendant to "[d]escribe in detail all facts, proof, or evidence which, in whole or in part, form the basis of any defendant or affirmative defenses pled in this lawsuit" is an improper, so-called blockbuster interrogatory.

Likewise, the Court has sustained objections to Rule 34(a) requests for "[a]ll documents which evidence, describe, concern, or otherwise relate to the allegations in your Complaint" and "[a]ll documents not previously produced that support, contradict, or otherwise relate in any way to any of the allegations you have made in this lawsuit."

*Lopez*, 327 F.R.D. at 575-76, 577 (emphasis added) (cleaned up).

*c.  RFP No. 11*

RFP No. 11 seeks "[a]ll settlement agreements with any person or entity involved in this Lawsuit, including but not limited to Andrew Hillman, and Jeff Wasserman and/or Pioneer Labs." Mortazavi's Mot. to Compel, Ex. A at 17 (RFP No. 11).

Plaintiffs objected to the request "because it seeks documents that are irrelevant to Plaintiffs' claims against Mr. Mortazavi and Mr. Mortazavi's defenses thereto"; "the phrase 'involved in the Lawsuit' is vague – it is unclear what constitutes a sufficient connection to consider a person to be 'involved' in this matter"; and "it seeks documents related to settlement negotiations, which are inadmissible under Federal Rule of Evidence 408." *Id.*, Ex. B at 28.

With regard to their objection based on vagueness, Plaintiffs respond that they "are interpreting this Request to be seeking production of settlement agreements that released a party from potential liability for that party's actions undertaken in connection with Next Health." *Id.*

In his motion, Mortazavi accepts as "completely reasonable" Plaintiffs' interpretation of "involved in this lawsuit." Mortazavi's Mot. to Compel 8. Accordingly, the Court OVERRULES as moot Plaintiffs' objection based on vagueness.

With regard to Plaintiffs' remaining objections, however, Mortazavi does not state how these documents are relevant to his defenses and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Rather, he asserts that "why he wants

to see settlement agreements between Plaintiffs and co-defendants is not Plaintiffs' business." *Id.*

In opposition, Plaintiffs contend that "to compel production of the documents, he must articulate 'why he wants to see the settlement agreements.' The 'why' is therefore not only [Plaintiffs'] business, but also the Court's in analyzing his motion." Pls.' Resp. Br. 10. They argue that "[w]ithout further discussion, the motion should be denied." *Id.*

As a threshold matter, the Court finds that, with respect to RFP No. 11, Mortazavi's Motion to Compel does not satisfy its "initial burden" of "establish[ing] that the information and materials sought are within the scope of permissible discovery." *Orafunam v. AT & T Mobility Servs., LLC*, 2013 WL 2391522, at *2 (N.D. Tex. June 3, 2013) (Stickney, J.). He fails to explain how these documents are relevant to his defenses and proportional to the needs of the case.

In his reply brief, however, Mortazavi—for the first time—states why he believes the settlement agreements are relevant, i.e., because he "has a right to know those terms [of the settlement agreements] to determine whether they contain facts that impact the case now at bar, examples of which would include impeachment, offset, the creation of bias or incentives to lie or shift responsibility, and outright misrepresentations." Reply Br. 4. He further mentions that "[m]any of the settling Defendants have provided declarations or affidavits simultaneously with their settlements, calling into question bias and other credibility concerns." *Id.* 4-5. But Mortazavi does not elaborate further.

"Arguments raised for the first time in a reply brief are generally waived, as the responding party is deprived of the opportunity to respond to the new argument." *Robles v. Eminent Med. Ctr., LLC*, 619 F. Supp. 3d 609, 626 (N.D. Tex. 2022) (Lindsay, J.) (internal quotation marks and citations omitted); *see also White v. City of Red Oak, Texas*, 2014 WL 11460871, at *1 (N.D. Tex. July 31, 2014) (Solis, J.) ("Courts generally will not consider arguments raised for the first time in a reply brief.") (cleaned up) (citation omitted). As Mortazavi failed to meet his initial burden of establishing that the information and materials sought in RFP No. 11 were within the scope of permissible discovery and also waited until his reply brief to raise new arguments, the Court would be justified in sustaining Plaintiffs' objection for those reasons. And even if the Court considered Mortazavi's belated explanation, it would fall short of establishing any settlement agreements are relevant.

However, in the Court's discretion and the interest of fairness, the Court considers Cary Rossel's arguments related to requests for the same documents, which Rossel raises in his motion to compel (ECF No. 649) filed more than a month after Mortazavi filed his reply. And, as set forth below, the Court finds that Rossel's request for production of the settlement agreements falls within the scope of discovery under Federal Rule of Civil Procedure 26(b)(1), as it is relevant and proportional to the case. *See infra* Sec. 2. Thus, the Court OVERRULES Plaintiffs' objections to RFP No. 11.

Accordingly, the Court GRANTS Mortazavi's Motion to Compel with respect to RFP No. 3 (as modified) and RFP No. 11 and DENIES the Motion in all other respects. Plaintiffs are ORDERED to submit a supplemental response to Mortazavi's Request for Production and produce documents responsive to RFP No. 3, *limited in temporal scope to January 1, 2011, to the present,* and to produce all settlement agreements responsive to RFP No. 11.

The Court STAYS any requirement for Plaintiffs to produce responsive documents pending the Court's resolution of Mortazavi's motion to stay and the parties' summary judgment motions. The parties also must—if necessary—work together in good faith to submit a proposed order to ensure the confidential use by the parties of the settlement agreements in the event the current Qualified Protective Order (ECF No. 618) is insufficient.

2. <u>The Court GRANTS Cary Rossel's Motion to Compel Production of Settlement Agreements (ECF No. 649).</u>

Cary Rossel, like Mortazavi, seeks to compel production of settlement agreements, as requested in RFP Nos. 36 and 41 of his First Set of Discovery to Plaintiffs served on April 26, 2021. Rossel's Mot. to Compel 1-2; *id.*, Ex. F at 41, 74 (RFP Nos. 36, 41), ECF No. 649-1. Unlike Mortazavi, however, Rossel has explained the relevance of the settlement agreements and provided evidence supporting his arguments. For the reasons that follow, the Court will grant his Motion to Compel and overrule Plaintiffs' objections.

As previously explained, after years of contentious litigation, many former Defendants have now settled with Plaintiffs. The settling Defendants include Andrew Hillman and Kirk Zajac, as well as Pioneer (which was owned by Jeffrey Wasserman), and former co-Defendants in this case, Mike Austin, Nick Austin, Josh Daniel, and Josh Ihde. Plaintiffs have produced sworn declarations from several of the settling Defendants, including Mike Austin, Nick Austin, Josh Daniel, and Kirk Zajac. Rossel's Mot. to Compel 2.[3] And, Rossel has provided the Court with Plaintiffs' Initial Disclosures, listing each of these individuals as persons they may use to support their claims. *Id.*, Ex. A at 2-3, 5.

In addition, in the related *Synergen Health* litigation, between June 2022 and August 2022, Synergen—Next Health's third-party billing company—deposed settling Defendants Nick Austin, Mike Austin, and Josh Daniel.[4] During their respective depositions, each provided testimony relating to the circumstances surrounding the creation of their respective declarations. Attached to Cary Rossel's Motion to Compel is deposition testimony from Nick Austin in the *Synergen Health* litigation stating his understanding that signing a declaration was a condition of dismissal from this lawsuit, and that the declaration was made a

---

[3] The Declarations are filed on the docket in the *Next Health* case. *See Next Health*, 3:17-cv-00243, ECF No. 702-1 at 86-98.

[4] In 2020, Plaintiffs filed a related case against Synergen Health, LLC, a third-party billing entity, alleging that, in cooperation with Next Health and its principals, Synergen knowingly submitted false health insurance claims for lab services. *See UnitedHealthcare Services, Inc., et al. v. Synergen Health, LLC*, 3:20-cv-00301 (N.D. Tex.). The parties in that case filed a stipulation of dismissal on January 4, 2023, ECF No. 160 in Case No. 3:20-cv-301, a few days before trial was set to begin.

physical part of the settlement document. *See id.*, Ex. B at 28. Also attached is additional deposition testimony from Josh Daniel and Mike Austin indicating that the declarations were physically affixed to the settlement agreements and that the Plaintiffs were the primary drafters of the declarations. *See id.*, Ex. C at 30, Ex. D at 32. Based on this and other evidence, Rossel contends there are "legitimate and relevant concerns regarding the credibility of testimony provided by settling Defendants in exchange for their dismissal from the case, and thus the settlement agreements are relevant and discoverable." *Id.* at 4.

Rossel also argues he is entitled to the settlements agreements to evaluate the applicability and amounts of settlement credits, as Plaintiffs have alleged that he is a joint tortfeasor with the settling Defendants. Reply Br. 3, ECF No. 652. In addition, insofar as Plaintiffs are concerned about the disclosure of confidential information contained within the settlement agreements, he "renews his agreement to a confidentiality restriction, per the Parties' existing Qualified Protective Order, in order to alleviate Plaintiffs' concerns." *Id.* at 3.

In response to RFP Nos. 36 and 41, Plaintiffs provide the same objections as to Mortazavi's request for the settlement agreements, including that the requests seek documents "that are irrelevant to Plaintiffs' claims against Mr. Rossel and [his] defenses thereto"; and the requests seek "documents related to settlement negotiations, which are inadmissible under Federal Rule of Evidence 408." *See id.*, Ex. F at 41, 74 (Obj. & Resp. to RFP Nos. 36, 41). In their response brief, Plaintiffs do not address or refute the contents of the settling Defendants' declarations or

their deposition testimony in the *Synergen Health* litigation. They also do not address the cases cited by Cary Rossel in his Motion to Compel supporting the discoverability of settlement agreements, when relevant.

While Rule 408 of the Federal Rules of Evidence, upon which Plaintiffs rely, may limit the introduction at trial regarding settlement negotiations, it does not govern discovery. *See* Fed. R. Evid. 408; *see also Allergan, Inc. v. Teva Pharms. USA, Inc.*, 2017 WL 132265, at *3 (E.D. Tex. Jan. 12, 2017) ("Rule 408 was directed to the issue of the admissibility of settlement material, not its discoverability.") (cleaned up). Further, Rule 408 recognizes the admissibility of settlements to prove, *inter alia*, bias or prejudice of a witness. *See* Fed. R. Evid. 408.

Rather than Federal Rule of Evidence 408, Rule 26(b)(1)'s relevancy requirement applies. *See* Fed. R. Civ. P. 26(b)(1). Although litigants cannot shield a settlement agreement from discovery merely because it contains a confidentiality provision, or was filed under seal, discovery of such an agreement is only appropriate if it is itself relevant to the subject matter of the action. *See, e.g., TIGI Linea Corp. v. Pro. Prod. Grp., LLC*, 2021 WL 1947341, at *7 (E.D. Tex. May 14, 2021) ("Among the federal courts, there is a general consensus that confidential settlement agreements are discoverable. . . . Accordingly, federal courts regularly order the production of settlement agreements, so long as such agreements are relevant within the meaning of Rule 26(b)."); *Hoffman v. AmericaHomeKey Inc.*, 2015 WL 12698388, at *1 (N.D. Tex. June 24, 2015) (Toliver, J.) ("[T]he scope of

allowable discovery is broad and includes the discovery of settlement agreements without regard to confidentiality provisions[.]") (citation omitted).

Courts have afforded non-settling defendants access to confidential settlement materials where those defendants have asserted the potential relevance of settlement materials, or information ultimately derived therefrom, to the settling parties' bias, interest, or prejudice. *See Cleveland Const., Inc. v. Whitehouse Hotel, Ltd. P'ship*, 2004 WL 385052 at *1 (E.D. La. 2004) (ordering disclosure where settlement agreement was relevant to credibility of witnesses) (citing *ABF Capital Mgmt. v. Askin Cap.*, 2000 WL 19698 at *2 (S.D.N.Y. 2000)).

However, such information concerning bias and interest would not be relevant in and of itself. Rather, such information is potentially relevant because of a settling co-defendant's contemplated cooperation, at trial, with his or her former adversary. Here, the amount of money that Plaintiffs have agreed to accept from the settling Defendants, in exchange for dismissing the case against them, as well as other terms of the settlement, may bear on the issue of the settling Defendants' bias and prejudice. For example, in the event a settling Defendant may have been liable to Plaintiffs for a substantial amount of damages were Plaintiffs to prevail, if they agreed to dismiss him in exchange for a nominal sum and his cooperation, that information may be relevant to his credibility.

The reasons advanced by Rossel are sufficient to satisfy his burden under Rule 26. He seeks the settlement agreements primarily for their impeachment value, that is, to establish the potential bias of the settling Defendants. In addition,

on the record presented, the Court agrees that the settling Defendants may be important fact witness because they were direct participants in the events that give rise to Plaintiffs' claims against Cary Rossel. The settlement agreements are, therefore, relevant to the settling Defendants' motivation for testifying. In addition, in the event Plaintiffs prevail, the settlement agreements are relevant to Rossel's evaluation of the applicability and amounts of settlement credits.

For these reasons, the Court finds that Cary Rossel's request for production of the settlement agreements in RFP Nos. 36 and 41 falls within the scope of discovery under Federal Rule of Civil Procedure 26(b)(1), as it is relevant and proportional to the case. Accordingly, the Court OVERRULES Plaintiffs' objections to RFP Nos. 36 and 41 and GRANTS Rossel's Motion to Compel.

The Court ORDERS Plaintiffs to submit a supplemental response to Cary Rossel's Requests for Production and produce all settlement agreements responsive to Defendant Cary Rossel's RFP Nos. 36 and 41. However, the Court STAYS any requirement for Plaintiffs to produce responsive documents pending the Court's resolution of Mortazavi's motion to stay and the parties' summary judgment motions. The parties also must—if necessary—work together in good faith to submit a proposed order to ensure the confidential use by the parties of the settlement agreements in the event the current Qualified Protective Order (ECF No. 618) is insufficient.

3. The Court DENIES Cary Rossel's and Jeremy Rossel's Motion to Compel Production of Documents (ECF No. 675).

Cary Rossel and Jeremy Rossel move to compel two categories of documents: (1) settlement-related communications between Plaintiffs and current or former Defendants; and (2) documents relating to "medical necessity" evaluations of claims submitted by Next Health to Plaintiffs. Rossel Defs.' Mot. to Compel 3-9; Rossel Defs.' Reply Br., ECF No. 703. Plaintiffs oppose the motion. *See* Pls.' Resp. Br., ECF No. 693. For the reasons that follow, the Court denies the motion.

a. *Communications Between Plaintiffs and Current and Former Defendants*

On April 26, 2021, Cary Rossel served his First Set of Discovery to Plaintiffs. As relevant here, he made the following discovery request:

> RFP No. 2: Produce all documents reflecting United's communications with any current or former defendants in this case, including owners, officers, directors, executives, employees, agents, contractors, or other individuals working for, or on behalf of, any defendant, related to the allegations in the Second Amended Complaint.

App. to Rossel Defs.' Mot. to Compel ("Rossel Defs.' App.") at 17 (RFP No. 2), ECF No. 675-1.

Plaintiffs objected to the request "because it is overly broad—it does not identify any limitation in time or scope—and, without those limitations, the burden of attempting to gather requested documents would be significant and greatly outweigh the potential benefit of the documents in resolving any issues in this

case." *Id.* at 27 (Pls.' Obj. & Resp. to RFP No. 2). Plaintiffs also objected to the request "because it serves no legitimate discovery purpose; it seeks to invade Plaintiffs' attorneys' opinion work product"; and objected "to the extent it seeks documents related to settlement negotiations, which are inadmissible under Federal Rule of Evidence 408 and irrelevant to the Parties' claims or defenses." *Id.* at 27-28.

In an additional set of discovery to Plaintiffs served on September 15, 2023, Jeremy Rossel sought discovery of documents provided to Plaintiffs by three settling Defendants (Mike Austin, Nick Austin, and Josh Daniel). *Id.* at 73 (RFP Nos. 6-8).

> Plaintiffs objected to Jeremy Rossel's RFP Nos. 6-8 as follows:
>
> Plaintiffs object to this request to the extent it seeks documents and communications provided to Plaintiffs by Nick [and Mike] Austin [and Josh Daniel] as part of the settlement process, as such documentation is protected from disclosure under the Texas Alternative Dispute Resolution Procedures Act (Tex. Civ. Prac. & Rem. Code Ann. §§ 154.053 & 154.073). Such documents also are irrelevant to Plaintiffs' claims against Defendant[s] and Defendant[s]' defenses thereto and inadmissible under Federal Rule of Evidence 408.

*Id.* at 96-97 (Pls.' Obj. & Resp. to RFP Nos. 6-8).

In response to the Motion to Compel, Plaintiffs represent that they have already produced all "written communications directly between [themselves] and any current or former defendants, either inside or outside the context of settlement discussions," but not "written communications between [their] litigation counsel and lawyers for current and former defendants." Pls.' Resp. Br. 2-3. Defendants do

not dispute this representation. As to these withheld documents, Plaintiffs argue that they are irrelevant and that the burden of producing them is disproportional to any conceivable need. *Id.* at 3.

Notably, the Court has granted Cary Rossel's motion to compel the settlement agreements executed by Plaintiffs and the settling Defendants. *See supra* Sec. 2. The Rossel Defendants did not have the benefit of this ruling when they filed their motion. And, the Court agrees with Plaintiffs that "even if the Court rules that [the] Rossel Defendants are entitled to the settlement agreements to probe potential bias [which it has], they have provided no basis to require [Plaintiffs] to additionally produce the lawyer-to-lawyer communications contemplated by this motion." Pls.' Resp. Br. 7. Otherwise stated, Cary Rossel and Jeremy Rossel have not articulated a different or additional need beyond the reason they seek the agreements themselves, which the Court has already ordered Plaintiffs to produce.

In addition, the Court SUSTAINS Plaintiffs' objection that the burden of producing documents beyond the settlement agreements themselves is disproportional to the needs of the case. Cary Rossel and Jeremy Rossel fail to identify any limitation in time or scope. Plaintiffs' counsel would be required to look through seven years of e-mails and other communications, authored by numerous lawyers from different firms, for every communication they had with numerous opposing attorneys. In light of this overbreadth and undue burden, and because the Court has now granted Cary Rossel's Motion to Compel the settlement

agreements themselves, the Court finds the current request is not proportional to any articulated need.

   b.  *"Medical Necessity" Review Materials*

In his First Set of Discovery to Plaintiffs, Cary Rossel made the following discovery request:

> RFP No. 13: Produce all documents reflecting any medical necessity review performed by United of any claims submitted to United by Next Health, from 2011 through 2017.

Rossel Defs.' App. at 19 (RFP No. 13).

 Plaintiffs objected to this request as vague because the term "medical necessity" has different meanings, depending on the context. *Id.* at 36 (Pls.' Obj. & Resp. to RFP No. 13). Plaintiffs also objected because the request seeks information protected by the work product doctrine and attorney-client privilege. *Id.*

Jeremy Rossel's September 27, 2023, discovery requests included the following similar discovery request:

> RPF No. 15: Produce all Your policies and procedures from 2014 to 2017 for determining whether Laboratory or Pharmacy Claims were medically necessary, including all standards, principles, factors, conditions, and criteria for establishing medical necessity.

*Id.* at 92 (RFP No. 15).

Plaintiffs asserted similar objections to those it asserted to Cary Rossel's RFP No. 13. *See id.* at 111 (Obj. & Resp. to RFP No. 15).

Contending these documents were withheld because a review of the medical necessity of the claims at issue was done by or through counsel, Plaintiffs have

compiled a privilege log containing files related to SIU investigations, which include eleven responsive documents. *Id.* at 3-13 (Privilege Log). With respect to these documents, the undersigned conducted an *in camera* review of the same documents in the related *Synergen Health* litigation and found that Plaintiffs' Privilege Log satisfied Plaintiffs' burden to show the withheld documents are covered by the attorney-client privilege and/or work product doctrine. *See Synergen Health*, 3:20-cv-00301, Order, ECF No. 119. Cary and Jeremy's suggestion that the Court would reach a different result now (*see* Reply Br. 9-10, ECF No. 703) is speculative and unavailing. The Court, therefore, SUSTAINS Plaintiffs' objections based on attorney-client privilege and/or work product doctrine.

Accordingly, the Court DENIES Cary Rossel and Jeremy Rossel's Motion to Compel written communications between Plaintiffs' counsel and counsel for former and current Defendants, some of which concern potential and later consummated settlements, as well as medical necessity review materials.

4. The Court GRANTS in part and DENIES in part Plaintiffs' Motion to Compel Production of Documents by Cary Rossel and Third-Party Critical Healthcare Management, LLC (ECF No. 664).

Plaintiffs move for an order compelling Cary Rossel and his company Critical Healthcare Management, LLC (CHM) to produce unredacted versions of documents and communications they withheld based on Rossel's assertion that those materials are protected by attorney-client and work-product protections once held by Next Health. *See* Pls.' Mot. to Compel 1, 4.

From April 26, 2021, to February 2, 2023, Plaintiffs served document production requests on Rossel seeking, *inter alia*, communications and documents exchanged between Rossel and other former Next Health executives and persons and businesses involved with Next Health; Rossel's personal financial documents, including those reflecting credit and charge card purchases he made on behalf of Next Health; and documents he might use to support his advice-of-counsel defense. *See* App. to Pls.' Mot. to Compel 1-36 (RFP Nos. 4, 7, 8-13, 18-20), ECF No. 664-1; *id.* at 39-46 (CHM Subpoena).

Rossel objected to the requests as facially overbroad and unduly burdensome, harassing, not proportional to the needs of the case, and not relevant to any claim or defense in this lawsuit. *Id.* at 5, 13-17, 22-25, 32-24. In addition, he objected to these requests as "seeking documents which are protected by the attorney-client and work-product privilege." *Id.*

Plaintiffs contend that Rossel and CHM cannot withhold responsive documents based on the attorney-client privilege or work-product doctrine once held by Next Health because it is "defunct." Pls.' Mot. to Compel 4. Plaintiffs do not dispute that Rossel and CHM "may protect their *own* privilege and work product." *Id.* at 4 (original emphasis). But, Plaintiffs maintain, "both Mr. Rossel and CHM are withholding thousands of documents that hit on the agreed search terms, purely on the basis that they are protected—not by Mr. Rossel's or CHM's attorney-client privilege or because documents contain work product produced by Mr. Rossel's or CHM's counsel—but based on *Next Health's* attorney-client

privilege and work product produced at the direction of *Next Health's* counsel." *Id.* at 3 (original emphasis). Further, Plaintiffs assert that counsel for CHM and Rossel "have confirmed that, absent a Court order, they will not produce documents they claim are protected by Next Health's privilege." *Id.* at 3.

In response, Cary Rossel informs the Court that he has produced "over 40,000 pages of documents in response to this litigation, including personal texts and emails dating back to 2014," and that "CHM has produced another approximately 10,000 pages of documents in response to United's expansive requests." Rossel's Resp. Br. 6-7, ECF No. 668. Along with his response, Rossel has provided an amended privilege log with information about the communications and documents withheld in response to Request Nos. 4 and 7. *See* Privilege Log, App. to Resp. Br. 1-40, ECF No. 668-1.

In further response, Rossel first contends that the Motion to Compel is "procedurally deficient in part" because Plaintiffs "fail[ed] to adequately confer with [his] counsel regarding objections to the scope of Requests 8-13 and 18-20," and "it is . . . premature to move on the privilege issues as to those Requests." Rossel's Resp. Br. 6-7. Second, in response to Plaintiffs' contention that he cannot claim attorney-client or work-product privilege on behalf of the now-defunct Next Health, he argues that Next Health is not defunct; that it "has an existing attorney-client privilege and [he] can rightfully claim it"; and that he can assert Next Health's attorney-client and work-product privilege under the "common legal interest doctrine." *Id.* at 13-22. Finally, as to the Privilege Log, he argues that, to

the extent that Plaintiffs claim that any item on the privilege log is deficient as to supporting privilege, they have "failed to confer on such items, identify any such item, show how any individual response is deficient or incomplete, or ask the Court for specific relief as to any particular item." *Id.* at 12-13.

### a. Failure to Confer on RFP Nos. 8-13 and 18-20

While Rossel concedes "that the parties did reach an impasse as to the ultimate question raised by Plaintiffs' Motion, as to whether any privilege could be invoked by Mr. Rossel with respect to communications with Next Health attorneys or others, including Next Health employees, about Next Health legal matters[,]" he contends:

> No substantive conferral took place regarding United's intention to move to compel any other Requests for Production other than on privileged items being withheld and logged for Request Nos. 4 and 7, and the general concept of whether a Next Health privilege still existed. Mr. Rossel was unaware United intended to move on privilege specifically as to Requests Nos. 8-13 and 18-20 until the Motion had been filed.

*Id.* at 10-11.

Plaintiffs' Motion to Compel included a certificate of conference stating that "from early May to October 4, 2023, counsel for Plaintiffs (including Scott Kerew, Emily Adams, and Ben Van Horn) conferred with counsel for Cary Rossel and CHM (including Nisha Byers, Ben Passey and Chris Quinlan) concerning the subject matter at issue in this motion, which is opposed[.]" Pls.' Mot. to Compel 11. But, nowhere in their reply brief do Plaintiffs address, or attempt to refute, Rossel's contention that they failed to confer or have substantive discussions as to the

objections raised with respect to RFP Nos. 8-13 and 18-20 prior to filing the Motion to Compel. *See generally* Pls.' Reply Br., ECF No. 673.

"[A] proper Rule 37(a) motion to compel . . . must include a certification that the movant has made a good faith effort to meet and confer regarding the *specific discovery disputes at issue*, and to resolve them without court intervention, as required by Federal Rule of Civil Procedure 37(a)(1) and Northern District of Texas Local Civil Rule 7.1." *Samsung Elecs. Am. Inc. v. Chung*, 325 F.R.D. 578, 594 (N.D. Tex. Mar. 7, 2017) (Horan, J.) (cleaned up) (emphasis added); *accord* Fed. R. Civ. P. 37(a)(1).

On this record, the Court SUSTAINS Rossel's objection to Plaintiffs' Motion to Compel responses to RFP Nos. 8-13 and 18-20 and denies without prejudice Plaintiffs' Motion to Compel with respect to these requests. *See Lopez*, 327 F.R.D. at 585 ("Conference requirements encourage resolving discovery disputes without judicial involvement. Failure to confer or attempt to confer may result in unnecessary motions. When the court must resolve a dispute that the parties themselves could have resolved, it must needlessly expend resources that it could better utilize elsewhere. Failure to confer generally serves as a basis for denying a discovery motion.") (citation omitted). The Court urges the parties to confer and attempt to resolve their disputes concerning RFP Nos. 8-13 and 18-20 without court intervention based on the Court's ruling below with respect to Plaintiffs' Motion to Compel Request Nos. 4 and 7.

### b. RFP Nos. 4 and 7

In response to Plaintiffs' contention that he cannot withhold responsive documents based on the attorney-client privilege or work-product doctrine once held by Next Health because it is "defunct," Cary Rossel argues he "has an existing attorney-client privilege and [he] can rightfully claim it"; and that he can assert Next Health's attorney-client and work-product privilege under the "common legal interest doctrine." Rossel's Resp. Br. 13-22.

### i. *Mr. Rossel's Assertion of Attorney-Client Privilege and Work Product Protection on Behalf of Next Health*

For the reasons that follow, the Court finds that because the protections at issue may only be asserted by Next Health itself (for attorney-client privilege) or Next Health or its counsel (for work product), and Next Health is defunct, Rossel, either on behalf of himself or CHM, has no basis to refuse to produce documents by asserting these protections on behalf of Next Health.

### ii. *Next Health's Status*

As a threshold matter, the Court rejects Rossel's counsel's assertion that Next Health is not defunct. *See* Rossel's Resp. Br. 13-14, 29. On November 18, 2020, Next Health's former counsel admitted that the company had been "defunct" since at least July 2018. *See Next Health*, 3:17-cv-00243, 11/18/2020 Hr'g Tr. 48, ECF No. 530. On September 22, 2022, Next Health's current counsel stated that "Next Health lacks any employees or representatives and thus cannot assist or direct Counsel in their representation"; and "Next Health is insolvent and without

34

resources to continue litigation." *Next Health*, 3:17-cv-00243, Unopposed Mot. to Withdraw 4, 5, ECF No. 715. On December 9, 2022, Cary Rossel wrote in an e-mail that "N[ext]H[ealth] was defunct." *See* App. to Pls.' Reply Br. 52 (Rossel e-mail), ECF No. 673-1. And, at his November 2, 2023 deposition, Rossel stated Next Health had been defunct since September 2017, when, during the pendency of Plaintiffs' lawsuit against Next Health he, as Next Health's sole manager, "sold" off Next Health's last remaining revenue-generating assets. *Id.* at 43-46 (Rossel Dep. at 14-15, 23-24, 118-19).[5]

### iii. Applicable Law Governing Privilege Issues

Prior to addressing whether Cary Rossel may invoke privileges on behalf of Next Health, when Next Health is defunct, this Court must first determine what law applies to the privilege issue.

Federal Rule of Evidence 501 governs the law of privilege in federal courts and provides: "The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the

---

[5] The Court also rejects Rossel's counsel's contention that whether Next Health is legally defunct (as opposed to functionally defunct) is an open question because Next Health is still listed as "in existence" on the Texas Secretary of State website. Counsel cites a Texas business wind-up provision that governs litigation against terminated entities. *See* Rossel's Resp. Br. 13-14 (citing Tex. Bus. Orgs. Code § 11.356). As Plaintiffs correctly note in their reply, however, Next Health is not a "terminated filing entity." *See* Tex. Bus. Orgs. Code § 11.001(5). And this is not a proceeding "for purposes of [ ] prosecuting or defending in the terminated filing entity's name." Tex. Bus. Orgs. Code § 11.356(a)(1). *See* Pls.' Reply Br. 4 ("The cited provisions exist to facilitate [a] corporation's trustee or other representative in managing dissolution procedures for a limited time, not for a corporation's former representative to protect his personal interest.").

following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501.

Plaintiffs contend that federal common law of privilege applies in this dispute, because the Court has "federal question jurisdiction under 28 U.S.C. § 1331 as to Plaintiffs' civil RICO claim, but it also has supplemental jurisdiction under 28 U.S.C. § 1367 regarding their state law fraudulent transfer cause of action." *See* Pls.' Mot. to Compel 5, note 2. Rossel counters that Texas law controls because Plaintiffs also allege subject matter jurisdiction based on diversity of citizenship and state law claims predominate. *See* Rossel's Resp. Br. 17 and note 4. Notably, in the Second Amended Complaint, Plaintiffs allege federal subject matter jurisdiction based on federal question and diversity of citizenship. *See* Sec. Am. Compl. ¶¶ 13-14.

As summarized by one district court: "Although the Fifth Circuit has not addressed this issue, most other circuit courts have held that federal law of privilege governs determination of all privilege issues raised in a federal question case involving pendent state law claims, even where the evidence sought is relevant to a pendent state law claim to which a contrary state privilege law would otherwise apply." *Tonti Mgmt. Co. v. Soggy Doggie, LLC*, 2020 WL 9172077, at *2 (E.D. La. June 25, 2020); *see also id.* at n.5 (collecting circuit court cases).

In accordance with Federal Rule of Evidence 501, state law governs a privilege dispute in a diversity case. *See Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 724 (5th Cir. 1980); *Parker v. State Farm Lloyds*, 2018 WL 6573163, *1 (N.D. Tex. Jun. 6, 2018) (Godbey, J.).

The Court has found no binding authority in the Fifth Circuit or elsewhere addressing what privilege law applies in a case where the complaint alleges both federal question jurisdiction and diversity jurisdiction, as here. Nor have the parties provided any case law or engaged in any conflicts-of-law discussion. And, the conflict is real. Under the federal common law of privilege, as Plaintiffs correctly note, "the majority federal common law rule is that a dissolved or defunct corporation may not invoke the attorney-client privilege that otherwise might have applied if it still were operating." Pls.' Mot. to Compel 5-6 (collecting cases). But, Texas Rule of Evidence 503(c) provides that the attorney-client privilege may be claimed by "the successor, trustee, or similar representative of a corporation, association, or other organization or entity—*whether or not in existence*." Tex. R. Evid. 503(c) (emphasis added).

Nevertheless, under either scenario, the Court finds that Cary Rossel may not assert attorney-client privilege on behalf of Next Health, which is defunct.

Where federal law applies the rule of decision, "the weight of authority . . . holds that a dissolved or defunct corporation retains no privilege." *S.E.C. v. Carrillo Huettel LLP*, 2015 WL 1610282, at *2 (S.D.N.Y. Apr. 8, 2015) (collecting cases); *see also United States v. Cole*, 569 F. Supp. 3d 696, 700-01 (N.D. Ohio

2021) ("In federal courts, the weight of authority holds that a dissolved or defunct corporation retains no privilege. The Court finds that this majority rule is well-supported by the principles underlying attorney-client privilege.") (cleaned up). Thus, in the event the Court applies federal common law as the rule of decision, based on the weight of authority, the Court concludes that Cary Rossel may not assert an attorney-client privilege on behalf of Next Health, as it is defunct.

Applying Texas law, which appears to recognize that the attorney-client privilege survives the dissolution of a corporation since it may be claimed by a corporation "whether or not in existence," the Court would reach the same result. Under the Texas Rules of Evidence, attorney-client privilege may only be claimed by "(1) the client; (2) the client's guardian or conservator; (3) a deceased client's personal representative; or (4) the successor, trustee, or similar representative of a corporation, association, or other organization or entity--whether or not in existence," Tex. R. Evid. 503(c). In Next Health's attorney-client relationship, Next Health was the client, not Rossel. He was a client-representative and resigned that role more than a year ago. Thus, as Plaintiffs correctly contend:

> [E]ven if Texas privilege law applied; even if the inapplicable Texas wind-down provisions Mr. Rossel cites, discussed above, controlled; and even if Next Health retains a hypothetical privilege under Texas law for limited purposes of participating in dissolution or bankruptcy proceedings, Mr. Rossel has no right to invoke that privilege.

Pls.' Reply Br. 5.

Rossel's remaining arguments are an appeal to public policy. *See* Rossel's Resp. Br. 15-16. The cases he cites, however, stand for the proposition that the

attorney-client privilege exists to protect the client, which, in some circumstances, is a corporation. The Court agrees with Plaintiffs that "[t]hese decisions therefore only strengthen the concept that Mr. Rossel, who is not the client (and not even the client representative anymore), has no right to assert Next Health's privilege." Pls.' Reply Br. 5-6.

Thus, regardless of whether federal common law or state law of privilege applies, Cary Rossel, either on behalf of himself or CHM, has no basis to refuse to produce documents by asserting attorney-client privilege on behalf of Next Health. In the same vein, Rossel and CHM cannot assert that work product created by and at the behest of Next Health's counsel should be protected from discovery here.

### c. Rossel's Assertion of the Common Legal Interest Doctrine

Rossel also argues he can assert Next Health's attorney-client and work product privilege under the common legal interest doctrine, which protects (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between potential co-defendants and their counsel. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). "However, because the privilege is an obstacle to truthseeking, it must be construed narrowly to effectuate necessary consultation between legal advisers and clients." *Id.* (internal quotations omitted). As with all claims of privilege, the party invoking a common interest privilege bears the burden of demonstrating its applicability. *Id.*

First, the communications in the Privilege Log pre-date Cary Rossel's involvement in this litigation or retention of counsel as part of this litigation. *See*

Privilege Log, App. to Resp. Br. 1-40. Rossel recently stated in response to Plaintiffs' motion for case-ending sanctions that Plaintiffs "utterly ignore[] the fact that until [they] filed [a] First Amended Complaint on September 30, 2019, there was no indication that . . . individual executives and employees[] would later be included in the litigation." Def. Cary Rossel's Resp. to Pls.' Mot. under Rule 37 for Case-Ending Sanctions 21, ECF No. 660. Rossel also testified at his deposition that he did not retain personal counsel in this matter until September 2019. App. to Pls.' Reply Br. 47 (Rossel Dep. at 155). Communications prior to September 30, 2019, cannot have been necessary to effectuate consultation between legal advisers and clients.[6] As such, the Court finds that Rossel has failed to meet his burden of establishing that the common interest privilege applies.

In sum, the Court finds that Next Health retains no attorney-client privilege because Next Health is defunct; Cary Rossel is not permitted to withhold documents by asserting that privilege; Rossel cannot claim that additional communications between him and his co-defendants and third parties are

---

[6] In opposition to Plaintiffs' Motion to Compel, Rossel asserts that in January of 2017, "it became clear there was a palpable threat of litigation, including possible charges of criminal conduct, against all executives and management of Next Health, given that the claims [Plaintiffs] asserted implicated the knowledge and participation of Next Health management[.]" Rossel's Resp. Br. 21. The Court concludes that Rossel is judicially estopped from taking this position, in light of his earlier position that he did not anticipate litigation until September 30, 2019, when Plaintiffs added him and other Executive Defendants in the First Amended Complaint. *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.").

protected by the work product doctrine; and the common legal interest doctrine has no application.

The Court also finds that RFP Nos. 4 and 7 seek relevant information and the requests are proportionate to the needs of the case. And, although Rossel raised other objections in his responses to RFP Nos. 4 and 7, he did not urge or argue in support of them in his response brief. Therefore, the Court finds he has waived these remaining objections. *See CGC Royalty Invs. I, LLC v. Bluewater Moorings, LLC*, 2017 WL 106795, at *3 (N.D. Tex. Jan. 11, 2017) (Horan, J.) (A "party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of its objection to a request, and, if it does not, it waives the objection.") (citations omitted).

Accordingly, the Court OVERRULES Rossel's and CHM's objections to RFP Nos. 4 and 7, GRANTS Plaintiffs Motion to Compel with respect to RFP Nos. 4 and 7, and orders Cary Rossel and CHM to supplement their response to Plaintiffs' Requests for Production and produce documents responsive to RFP Nos. 4 and 7. The Court STAYS any requirement for Rossel and CHM to produce responsive documents pending the Court's resolution of Mortazavi's motion to stay and the parties' summary judgment motions.

5.  <u>The Court GRANTS in part and DENIES in part Plaintiffs' Motion for Protective Order (ECF No. 666).</u>

On October 9, 2023, Defendants served a notice of deposition on Plaintiffs, seeking to take the deposition of a corporate representative pursuant to Federal

Rule of Civil Procedure 30(b)(6), and listing 29 Deposition Topics. *See* App. to Pls.'
Mot. for Protective Order, Ex. 1 (Notice of Rule 30(b)(6) Deposition), ECF No. 661-
1. That same day, Defendants served Plaintiffs with a Supplemental Notice of Rule
30(b)(6) Deposition, listing 4 additional Deposition Topics. *See id.*, Ex. B
(Supplemental Notice of Rule 30(b)(6) Deposition), ECF No. 661-2. On October
20, 2023, Plaintiffs filed their Motion for Protective Order seeking to preclude
Defendants from deposing their Rule 30(b)(6) corporate representative regarding
certain topics. The deposition began on October 24, 2023, and Plaintiffs provided
Jonathan Wilson, their Deputy General Counsel, as their Rule 30(b)(6) corporate
representative to testify on thirty-one of the noticed topics.

Plaintiffs continue to seek a protective order precluding Defendants from
deposing their Rule 30(b)(6) representative regarding Deposition Topic 29 and
Supplemental Deposition Topic 4.[7] Cary Rossel and Jeremy Rossel oppose the
motion, contending that Plaintiffs have not demonstrated good cause for the
protective order they seek, and "the probative value of the non-privileged
information sought in Deposition Topic 29 and Supplemental Deposition Topic 4
far outweighs any additional preparation that [Plaintiffs'] corporate representative
would have to undertake." Rossel Defs.' Resp. Br. 7, ECF No. 677.

---

[7] Plaintiffs originally sought a protective order with respect to Supplemental
Deposition Topic 2. Cary Rossel and Jeremy Rossel thereafter agreed to forego
Topic 2. *See* Rossel Defs.' Resp. Br. 6, ECF No. 677.

*a. Legal Standard*

Rule 30(b)(6) governs deposition notices directed to organizations. Fed. R. Civ. P. 30(b)(6). In the deposition notice, the requesting party "must describe with reasonable particularity the matters for examination." *Id.* In response, the organization must designate an agent or other person or persons to testify on its behalf "about information known or reasonably available to the organization." *Id.*

"The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (cleaned up) (citation omitted).

Under Rule 26(c)(1), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Rule 26(c)(1). If the court deems the motion meritorious, it may impose a protective order that, among other things, "forbid[s] certain disclosures, specif[ies] the terms for disclosure, forbid[s] inquiry into certain matters, or limit[s] the scope of disclosure to certain matters." *Alvarado v. Air Sys. Components LP*, 2022 WL 800731, at *2 (N.D. Tex. Mar. 15, 2022) (Godbey, J.) (citing Fed. R. Civ. P. 26(c)(1)(A)). The court has broad discretion to grant a motion for protective order, on a showing of "good cause," "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

"The court must 'balance the competing interests of allowing discovery and protecting the parties and deponents from undue burdens.'" *Samurai Global, LLC v. Landmark Amer. Ins. Co.*, 2023 WL 8627527, at *1 (N.D. Tex. Dec. 13, 2023) (Fitzwater, J.) (quoting *Williams ex rel. Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002) (Kaplan, J.) (citation omitted)). The party seeking the protective order bears the burden of making a specific objection and showing that the discovery fails the Rule 26(b)(1) proportionality calculation. *Id.* (citing *Carter v. H2R Rest. Holdings, LLC*, 2017 WL 2439439, at *4 (N.D. Tex. June 6, 2017) (Horan, J.)).

   *b. Deposition Topic 29*

   Deposition Topic 29 seeks "the factual basis for [Plaintiffs'] claims against Jeremy Rossel, Cary Rossel, Amir Mortazavi, Josh Idhe, Arvin Zeinali, Yan Narosov, and Semyon Narosov" that "will be elicited or introduced by [Plaintiffs] at trial." *See* App. to Pls.' Mot. for Protective Order 8 (Notice of Rule 30(b)(6) Deposition Topic 29).

   In their motion, Plaintiffs do "not dispute that Defendants are generally entitled to discover basic facts and theories underlying [their] allegations," and they prepared a witness to speak about the facts "within [their] *corporate* knowledge," including "[their] investigations of the Next Health entities, reliance on Next Health's representations, and [their] measure of damages." Pls.' Mot. for Protective Order 2 (emphasis in original). Plaintiffs argue, however, that Topic 29 improperly seeks disclosure of attorney work product because their attorneys

would have to "teach [Plaintiffs'] representative all the important and consequential facts those attorneys have gleaned over the last seven years and present this synthesized work product at a deposition." *Id.* at 4. They contend that "Rule 30(b)(6) depositions seeking to discover all facts and documents supporting a party's positions are 'intru[sions] upon protected work product,' because they 'in effect' are requests for 'insight' into a litigation plan." *Id.* at 5 (quoting *Am. Nat'l Red Cross v. Travelers Indem. Co. of R.I.*, 896 F. Supp. 8, 14 (D.D.C. 1995)). On this basis, Plaintiffs seek to quash Deposition Topic 29. *Id.* at 4-5. In addition, Plaintiffs contend that Topic 29 should be answered by written interrogatories, which have already been propounded, rather than a Rule 30(b)(6) deposition. *Id.* at 7-8.

Cary Rossel and Jeremy Rossel counter that Deposition Topic 29 "seeks the underlying factual information, not [Plaintiffs'] attorneys' mental processes, legal opinion, or legal conclusions." Rossel Defs.' Resp. Br. 7. In addition, they contend that Deposition Topic 29 is best suited for a Rule 30(b)(6) deposition and not contention interrogatories. *Id.*

"The attorney's investigation and the manner in which he or she gathered and organized and analyzed the information and presented it to the corporate representative may itself be protected work product, but the underlying factual information itself remains discoverable through the corporate representative's testimony." *OrchestrateHR, Inc. v. Trombetta*, 2015 WL 11120526, at *7 (N.D. Tex. July 15, 2015) (Horan, J.). "Where the deponent is asked only about facts that are

responsive to the noticed deposition topics, testifying to the underlying facts and that the deponent learned a fact from the company's attorney – without more – does not impermissibly reveal protected attorney work product, including the attorney's mental processes, impressions, conclusions, opinions, or legal theories." *Id.* (citations omitted).

Deposition Topic 29 does not ask Plaintiffs to identify which facts their attorneys deem consequential to their litigation strategy. On its face, it does not seek to elicit testimony from Plaintiffs' corporate representative regarding Plaintiffs' attorneys' mental processes, legal opinion, or legal conclusions. It seeks all the facts related to Plaintiffs' claims against Defendants.

In addition, the Court has carefully reviewed the transcript from Mr. Wilson's October 24, 2023 deposition. *See* App. to Rossel Defs.' Resp. Br., Ex. 1 (Dep. Trans.), ECF No. 677-1. Mr. Wilson testified that he has been involved with the matter since before Plaintiffs filed the *Next Health* case on January 26, 2017. *Id.* at 15. He stated that he had reviewed numerous documents and spent between 150 and 200 hours reviewing those documents, in preparation of the 30(b)(6) deposition. *Id.* at 11-14. The Court finds that Mr. Wilson, based on his experience and preparation, is not a deponent who would need to be "spoon-fed" information to answer fact-based questions. Also, given Mr. Wilson's intimate knowledge of the case and 200 hours of document review, the Court finds that additional preparation, on balance, is outweighed by the likely probative value of the information.

46

However, the Court finds that contention interrogatories—rather than a Rule 30(b)(6) deposition—is the preferable device for Defendants to provide the requested information. *See InternetAd Sys., LLC v. ESPN, Inc.*, 2004 WL 5181346, *2 (N.D. Tex. 2004)* (Fitzwater, J.) (explaining that a contention interrogatory asks a party "to state what it contends, state whether it makes a specified contention, state all the facts upon which it bases a contention, take a position and explain or defend the position concerning how the law applies to facts, or state the legal or theoretical basis for a contention."); *Kaye v. Lone Star Fund V (U.S.), L.P.*, 2012 WL 13093400, at *4 (N.D. Tex. Mar. 23, 2012)* (Toliver, J.) (finding that topics that "veer into protected work-product territory . . . are more properly the subject of contention interrogatories"). Accordingly, the Court GRANTS in part and DENIES in part Plaintiffs' Motion for Protective Order with respect to Deposition Topic 29.

Specifically, the Court GRANTS Plaintiffs' motion for a protective order with respect to Deposition Topic 29, in that it will not allow Defendants to pose deposition questions to Plaintiffs' 30(b)(6) representative with respect to Deposition Topic 29. However, Defendants may serve contention interrogatories on Plaintiffs to elicit information relevant to Deposition Topic 29.

The Court STAYS any requirement for Plaintiffs to respond to any contention interrogatory pending the Court's resolution of Mortazavi's motion to stay and the parties' summary judgment motions.

*c. Supplemental Deposition Topic 4*

Supplemental Deposition Topic 4 covers the "terms of settlement agreements with any Medical Providers, Next Health Executives, or former employees of Next Health related to [Plaintiffs'] lawsuits against Next Health and related entities, individuals associated with Next Health, and Synergen, and negotiations regarding the same." *See* App. to Pls.' Mot. for Protective Order 14 (Supplemental Notice of Rule 30(b)(6) Deposition, Supplemental Topic 4).

Insofar as Supplemental Topic 4 requests testimony on the settlement agreements themselves, Plaintiffs argue that such testimony is inappropriate for the same reasons set forth in their opposition to Mortazavi's and Cary Rossel's respective motions to compel the settlement agreements. *See* Pls.' Mot. for Protective Order 10. Plaintiffs argue that, "[e]ven to the extent Defendants prevail on their Motion to Compel, and the settlement documents are produced, the documents will speak for themselves." *Id.* According to Plaintiffs, [i]t is difficult to conceive of appropriate questions to a [Plaintiffs'] representative about the settlement documents that would not inevitably trigger an invocation of privilege." *Id.* The Court agrees.

The Court previously overruled Plaintiffs' objections and granted Mortazavi's and Cary Rossel's Motions to Compel the settlement agreements. *See supra* Sec. 1, 2. The documents themselves will reveal the terms of the settlement agreements. Requiring Plaintiffs' 30(b)(6) representative to also answer deposition questions about the terms of the settlement agreements is unnecessary

and, therefore, unduly burdensome. Plaintiffs are entitled to a protective order prohibiting Defendants from posing questions to Plaintiffs' 30(b)(6) representative about the terms of settlement agreements.

Insofar as Supplemental Topic 4 seeks testimony disclosing the contents of negotiations that Plaintiffs have had with counsel for any settling defendant, Plaintiffs contend that these discussions are irrelevant and that "[s]trong federal policy supports settlement of cases, and the confidentiality of settlement agreements is a primary inducement to the parties to settle a case." Pls.' Mot. for Protective Order 10 (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 837 (S.D. Tex. 2009)). Plaintiffs argue it is "inconceivable that public policy would stand for deterring settlement of cases by making settlement negotiations themselves discoverable." *Id.*

In view of the fact that the Court has granted Mortazavi's and Cary Rossel's Motions to Compel the settlement agreements, the Court finds that allowing questioning regarding the negotiations, while potentially relevant, is outweighed by the public policy concerns undergirding the confidentiality of settlement negotiations, especially when many of the settlements were the result of mediation. *See, e.g., Newman v. Texas Parks & Wildlife Dep't*, 2018 WL 2722271, at *10 (S.D. Tex. June 6, 2018) (recognizing "strong public policy supporting complete confidentiality of mediation proceedings"). The Court GRANTS Plaintiffs' motion for a protective order with respect to Supplemental Deposition Topic 4.

*d. Scope of Inquiry*

Plaintiffs request that, in the event the Court allows the Rule 30(b)(6) deposition on either topic, it issue an order making clear that Defendants are not entitled to re-tread ground on topics about which they could have asked questions at the October 24, 2023. Pls.' Reply Br. 1-2. However, in view of the Court's rulings on Plaintiffs' Motion for a Protective Order, it is not necessary to address this request.

6.  <u>The Court GRANTS Plaintiffs' Motion to Compel Production of Financial Documentation from Cary Rossel, Jeremy Rossel, and Amir Mortazavi (ECF No. 674).</u>

Plaintiffs seek to compel Cary Rossel, Jeremy Rossel, and Mortazavi (together, the "Respondents") to respond to certain requests for financial documents pertaining to their current net worth. Pls.' Mot. to Compel 2-3. Plaintiffs contend this information is relevant because they seek exemplary damages in this litigation. *Id.* at 3-4 (citing cases). Notably, before filing the motion, Plaintiffs limited their requests to Respondents' respective personal tax returns and all supporting schedules/attachments for the years 2016–2021 to completely satisfy all financial documents sought to date. *Id.* at 3.

Mortazavi did not file a substantive response of his own, rather he adopted Cary Rossel and Jeremy Rossel's response in full. *See* Mortazavi's Resp. Br. 1, ECF No. 695. In their response, Cary and Jeremy concede that "net worth is discoverable when punitive damages are alleged." Rossel Defs.' Resp. Br. 3, ECF No. 692. They argue, however, that the requests are overbroad, that Plaintiffs

might obtain the discovery through other means, such as depositions or interrogatories, and that the discovery requests violate their federal constitutional rights to privacy. *Id.* at 3-5.

As a threshold matter, Respondents ignore that Plaintiffs bring only a limited request to the Court for consideration. *See generally id.* The Court, therefore, OVERRULES Respondents' arguments that Plaintiffs' original document requests are overbroad and unduly burdensome.

Respondents contend that Plaintiffs have "failed to show that there is a 'compelling need' for the tax returns because the information contained in the tax returns is not otherwise readily obtainable through alternative forms of discovery, such as depositions or sworn interrogatory answers." *Id.* at 3-4. In reply, Plaintiffs contend that "[t]his argument is disingenuous, given [Respondents'] position taken throughout discovery." Pls.' Reply Br. 3, ECF No. 699. Indeed, the record reflects that Cary Rossel and Jeremy Rossel refused to supply personal financial information in response to interrogatories or at their deposition, as recently as November 2, 2023. *See* C. Rossel and J. Rossel Interrog. Resps., App. 3, 7, ECF No. 699-1; C. Rossel Dep. at 75, App. 10 ("Q. Are you instructing him not to answer any questions about current financial status? A. Yeah.").

Respondents also maintain that Plaintiffs' requests violate their rights to privacy and due process under the Fourteenth Amendment to the United States Constitution. Rossel Defs.' Resp. Br. 5. But, to the extent the Constitution protects an individual's right to privacy, the Fourteenth Amendment only protects against

certain government actions. *See* U.S. Const. amend. XIV. And, with respect to Respondents' concerns regarding the confidential and personal nature of their tax returns, these concerns are addressed by the operative protective order—consented to by Respondents (and each Defendant) prior to entry of that protective order—which provides for the designation of confidential materials, the prohibition on dissemination of such materials outside this litigation, and the guaranteed return or destruction of confidential materials at the conclusion of this litigation. *See* Qualified Protective Order, ECF No. 618. Notably, in their motion, Plaintiffs "expressly agree[] to not challenge any confidential designation applied to tax returns produced as a result of this Motion to Compel." Pls.' Mot. to Compel 4-5.

In view of these circumstances, the Court OVERRULES Respondents' objections with respect to Plaintiffs' more limited request for their personal tax returns and supporting materials for the years 2016-2021.

Accordingly, the Court GRANTS Plaintiffs' Motion to Compel and ORDERS Cary Rossel, Jeremy Rossel, and Mortazavi to supplement their responses to Plaintiffs' Request for Production and produce their respective personal tax returns and related schedules/attachments for the years 2016 through 2021, subject to the operative protective order.

The Court STAYS any requirement for Cary Rossel, Jeremy Rossel, and Mortazavi to produce responsive documents pending the Court's resolution of Mortazavi's motion to stay and the parties' summary judgment motions.

7. The Court DENIES Plaintiffs' Motion to Compel Production of Next Health Emails (ECF No. 676).

On September 29, 2023, Plaintiffs served Cary Rossel and non-party CHM with the following request for production, which it now seeks to compel:

RFP No. 28

For the period beginning January 1, 2014, through September 30, 2019, produce all e-mails (and e-mail attachments/families) that You or Your attorneys have access to in the Next Health legacy database(s)/server(s) which hit on any of the search terms set forth on attached Exhibit A.

App. to Pls.' Mot. to Compel, Ex. 1 at 9 (RFP No. 28), ECF No. 676-1. Exhibit A contains three pages of search terms. *Id.* at 4-6.

Cary Rossel filed numerous detailed objections, including that he resigned from his position at Next Health on August 24, 2022, and does not have legal custody, possession, or control of the e-mails sought; the request is vague and overbroad as to the term "Next Health legacy database(s)/server(s)," as the term does not adequately direct him to the desired source of the information sought; and the request is also facially overbroad, unduly burdensome, and not proportional to the needs of this case. *Id.* at 9-10 (Obj. & Resp. to RFP No. 28). In addition, "given the huge breadth of the terms, without any appropriate limiting parameters, [Rossel] object[ed] to this Request as seeking documents which are protected by attorney-client and work product privileges." *Id.* at 10. As an example, he states that "the time frame includes a time period during which Plaintiffs were actively suing Next Health, and it is expected that this could include thousands, if

53

not tens of thousands or more, of emails related to that litigation, and thus this litigation, and thus privileged." *Id.* He also objected that "by its huge breadth, this Request seeks documents that are not relevant to any claim or defense in this lawsuit. As an example, this Request fails to limit the email search to any particular custodian, or by or between any particular individuals." *Id.* "Instead, it asks for a search of every email, over an almost 6[-]year period, for a company whose entities had at times hundreds, if not over 1,000, employees, and that might have the word "audit" somewhere, unlimited by any other search term." *Id.*

Finally, Rossel objects that

Plaintiffs already negotiated a search term list with Next Health in the original case, obtained the search terms hits, and was provided a privilege log. Production on this scale, at this juncture in this case, would be a massive burden in terms of expense and time, which is simply unjust and unfair to place on a single individual. In contrast to the tremendous burden of the request, the likely benefit would be minimal because many of the documents produced by the request would likely be duplicative.

*Id.*

Plaintiffs have now moved to compel Cary Rossel, individually, "and/or the non-party entity [CHM]" to produce Next Health e-mails responsive to RFP No. 28. Pls.' Mot. to Compel 5. They characterize as "absurd" his objection that he lacks legal possession, custody, or control of the responsive e-mails following his resignation from Next Health in 2022. *Id.* at 1. They assert "the reality here is, of course, that the 'Rossels' still have access to and control over the Next Health email databases. And so, the Court should compel Individual Defendant Rossel to

produce the emails UHC requests." *Id.* at 5. With regard to Cary Rossel's objection based on undue burden, Plaintiffs argue "there would be no burden because he hasn't objected based on privilege—his or Next Health's—so there are no privilege issues. All Mr. Rossel would have to do is run the search and produce the documents, which should take no more than a few hours." *Id.* at 3-4, note 3.

Rossel counters that Plaintiffs' motion "failed to adequately rebut [his] objections that (1) the documents are not in the legal custody, possession, or control of Defendant and (2) that the Request is overbroad, unduly burdensome, not proportional to the needs of the case, not narrowly tailored, and seeks irrelevant information." Rossel's Resp. Br. 8, ECF No. 696. He also argues that Plaintiffs "fail[] to cite to any facts or case law supporting [their] position that since Rossel is no longer affiliated with Next Health, and there is no one with Next Health to seek its emails from, that sole circumstance dictates that either CHM or Rossel, individually, have legal possession, custody, or control over the Next Health Emails, and should have to produce them." *Id.* at 9-10. He asserts that Plaintiffs' argument is "based on the fiction that, Next Health (a former defendant in the litigation), CHM (a non-party to this case), and Rossel (an individual) are all the same and have the same discovery obligations." *Id.* at 10. Rossel also points out that, contrary to Plaintiffs' assertion, he did object "given the breadth and scope of the Request, on the basis that certain emails may contain sensitive, private or attorney-client or work product privileged information[.]" *Id.* at 6-7.

CHM also filed a brief in opposition to the Motion to Compel, contending it is a non-party that is a separate legal entity with its own legal identity that is separate from Next Health and Cary Rossel. CHM's Resp. Br. 3, ECF No. 694. CHM contends that Plaintiffs "assert[] no factual or legal arguments that would support a finding that CHM is an alter ego of either Next Health or Mr. Rossel." *Id.* at 3. The Court agrees.

Further—setting aside whether Cary Rossel (or CHM) have legal "possession, custody, or control" of the Next Health e-mails—the Court finds that the request is overly broad, unduly burdensome, and not proportional to the needs of the case, and SUSTAINS Rossel's objections on these grounds. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

As a threshold matter, the Court finds that Plaintiffs' Motion to Compel does not satisfy its "initial burden" of "establish[ing] that the information and materials sought are within the scope of permissible discovery." *Orafunam*, 2013 WL 2391522, at *2. In the face of Cary Rossel and Jeremy Rossel's extensive and detailed objections, *supra*, and as Cary and Jeremy contend in their response brief, Plaintiffs make no attempt in their Motion to Compel to address objections that the request is overbroad and seeks documents irrelevant to this lawsuit, unduly burdensome, not proportional to the needs of the case, not narrowly tailored, and likely duplicative of discovery previously produced in the *Next Health* case. And, while Plaintiffs do attempt to address the objections based on undue burden, they erroneously assert there is no undue burden because Cary Rossel "hasn't objected

based on privilege—his or Next Health's—so there are no privilege issues. All Mr. Rossel would have to do is run the search and produce the documents, which should take no more than a few hours." Pls.' Mot. to Compel 3-4, note 3. As noted, however, Cary Rossel did object based on the attorney-client privilege and work product doctrine. *See* App. to Pls.' Mot. to Compel, Ex. 1 at 10 (Obj. & Resp. to RFP No. 28).

The Court finds that the search encompasses six years of e-mails and the search terms include common names and commonplace terms likely used on a daily basis by employees of the various Next Health companies. This search is overly broad and not narrowly tailored to any specific claim asserted by Plaintiffs. The Court's knowledge of the *Next Health* case and the discovery disputes presented in that action provide context for it to appreciate the vastness of the search terms and the resulting burden of responding to this request. The Court finds that the request is not proportional to the needs of the case.

Accordingly, the Court DENIES Plaintiffs' Motion to Compel Production of Next Health Emails.

8. <u>The Court DENIES Plaintiffs' Motion to Compel Third-Party Eric Narosov to Provide Deposition Testimony and Produce Documents (ECF No. 669).</u>

On September 29, 2023, Plaintiffs served third party Eric Narosov with a Rule 45 subpoena seeking documents and testimony. But Eric, who received the subpoena, failed to respond. He did not move to quash or for a protective order; he did not produce documents; and he did not attend his deposition scheduled for

October 26. Accordingly, Plaintiffs moved to compel Eric to produce documents and sit for a deposition. Thereafter, Eric called Plaintiffs' counsel and arranged to sit for his deposition in compliance with the subpoena and to produce responsive documents in his possession. Pls.' Mot. to Hold Resp. Deadline in Abeyance, ECF No. 686. In view of this arrangement, the Court held in abeyance Eric Narosov's deadline to respond to the motion to compel. Order, ECF No. 688. Plaintiffs represented that they would withdraw the motion to compel after Eric complied with the subpoena. Pls.' Mot. to Hold Resp. Deadline in Abeyance 1. To date, Plaintiffs have not withdrawn their motion. But neither have they advised the Court that Eric Narosov failed to honor his agreement to comply with the subpoena.

Accordingly, the Court DENIES without prejudice Plaintiffs' Motion to Compel Eric Narosov to Provide Deposition Testimony and Produce Documents. If Eric Narasov failed to comply with the subpoena after reaching an agreement with Plaintiffs' counsel, Plaintiffs may file a new motion to compel or for sanctions, if appropriate, after the Court disposes of Mortazavi's motion to stay and the parties' summary judgment motions.

9. The Court DENIES as moot Mortazavi's Request to Set a Hearing and/or Obtain a Ruling on his Motion to Compel (ECF No. 656).

Because the Court has ruled on his Motion to Compel, *see supra* Sec. 1, it DENIES as moot Mortazavi's request to set a hearing and/or obtain a ruling on the Motion to Compel.

10. The Court DENIES as unnecessary Mortazavi's Motion to Extend the Discovery Deadline (ECF No. 671).

In a motion, filed November 1, 2023, Mortazavi requests that the discovery period, set to close that day, be extended for a period of ninety days after a ruling is made on his Motion to Compel for "the limited purposes of re-opening the deposition of [Plaintiffs'] corporate representative and taking the depositions of Mike Austin, Nick Austin, and Josh Daniel." Mot. to Extend 4. Mortazavi asserts he "will need that time to secure the Compelled Documents, if any, from [Plaintiffs] that the Court orders to be produced, and then review and evaluate them in preparation of taking the foregoing depositions." *Id.* He notes Plaintiffs and the remaining Defendants have entered into a stipulation "to extend the discovery period by four months to complete the depositions of Mike Austin, Nick Austin, and Josh Daniel" to allow the Court time to rule on the parties' motions to compel. *Id.* Mortazavi states he "is not comfortable" limiting the stipulation to four months given the uncertainty when the Court's schedule and workload will permit it to rule on the pending discovery motions (including his). *Id.*

The Court has ruled on Mortazavi's Motion to Compel, *see supra* Sec. 1, and it is disposing of all the parties' discovery motions in this Omnibus Discovery Order. Additionally, the Court is STAYING any deadline for the parties to produce discovery until after the Court disposes of Mortazavi's motion to stay and the parties' summary judgment motions. Given these developments and Mortazavi's representation that the parties had previously agreed to extend the discovery

deadline to accommodate any necessary depositions, the Court finds Mortazavi's motion to extend the discovery deadline is unnecessary and DENIES it as such.

      11. <u>The Court DENIES any request for an award of expenses or attorneys' fees.</u>

      As movants, Mortazavi, Cary Rossel, Jeremy Rossel, and Plaintiffs all request the Court award them reasonable costs and fees associated with their respective motions to compel.

      Federal Rule of Civil Procedure 37 provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion to compel was filed, the Court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

      Substantial justification is met "if there is a genuine dispute" or "if reasonable people could differ as to appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations omitted) (cleaned up); *see also* 8B Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 2288 n.31 (3d ed. 2023) (quoting Advisory Committee's Note to the 1970 amendment to R. 37, 48 F.R.D. 487, 540 ("On many occasions, to be sure, the

dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to court. But the rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists.")).

Under the circumstances presented here, and given the procedural complexity involved in this and related cases, *Next Health* and *Synergen*, the Court finds that Movants had substantial justification for their respective objections and there was a genuine dispute over discovery. Therefore, the Court DENIES Movants' requests for any award of fees and costs.

## Conclusion

In the manner and to the extent set forth above, the Court:

1. GRANTS in part and DENIES in part Mortazavi's Motion to Compel (ECF No. 631);

2. GRANTS Cary Rossel's Motion to Compel Production of Settlement Agreements (ECF No. 649);

3. DENIES Cary and Jeremy Rossel's Motion to Compel Production of Documents (ECF No. 675);

4. GRANTS in part and DENIES in part Plaintiffs' Motion to Compel Production of Documents by Cary Rossel and Third-Party Critical Healthcare Management, LLC (ECF No. 664);

5. GRANTS in part and DENIES in part Plaintiffs' Motion for Protective Order (ECF No. 666);

6. GRANTS Plaintiffs' Motion to Compel Production of Financial Documentation from Cary Rossel, Jeremy Rossel, and Amir Mortazavi (ECF No. 674);

7.  DENIES Plaintiffs' Motion to Compel Production of Next Health Emails (ECF No. 676);

8.  DENIES without prejudice Plaintiffs' Motion to Compel Third-Party Eric Narosov to Provide Deposition Testimony and Produce Documents (ECF No. 669);

9.  DENIES as moot Mortazavi's Request to Set a Hearing and/or Obtain a Ruling on Motion to Compel (ECF No. 656); and

10. DENIES as unnecessary Mortazavi's Motion to Extend the Discovery Deadline (ECF No. 671).

To the extent the Court has ordered production of any discovery, that order is STAYED pending the Court's resolution of Mortazavi's motion to stay (ECF No. 724) and the parties' summary judgment motions (ECF Nos. 679, 681).

The Court further DENIES any request for reasonable expenses incurred in making any of the above-listed motions, including attorney's fees, as well as any relief not specifically granted by this Omnibus Discovery Order.

SO ORDERED.

March 25, 2024.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE