IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED HEALTHCARE SERVICES, INC. and UNITEDHEALTHCARE INSURANCE COMPANY, § § § § § § § | | |
| Plaintiffs, § | | |
| v. § | Case No. 3:21-cv-1547-L-BT | |
| § | | |
| JEREMY ROSSEL, AMIR MORTAZAVI, CARY ROSSEL, ARVIN ZEINALI, YAN NAROSOV, and SEMYON NAROSOV, § § § § § § | | |
| Defendants. § | | |

## **MEMORANDUM OPINION AND ORDER**

In this civil action seeking damages and other relief related to an alleged scheme to commit healthcare fraud, Defendant Amir Mortazavi moves to stay this case until his criminal trial is concluded. Mot. to Stay, ECF No. 724. For the reasons set forth below, the Court **denies** the Motion.

### Background

In 2016, the government obtained an indictment against two majority owners of Next Health LLC—Defendants Semyon Narosov and Andrew Hillman—charging them with operating a kickback scheme at Forest Park Medical Center Dallas. *See United States of America v. Alan Andrew Beauchamp, et al.*, No. 3:16-cr-0516 (N.D. Tex). On January 26, 2017, Plaintiffs—a payor of health benefits that administers and insures health and welfare benefit plans—sued Next Health LLC

1

and affiliated entities (collectively, "Next Health") for a variety of claims related to a multi-million-dollar healthcare fraud involving alleged false claims seeking payment for lab tests and prescription medications. *See United Healthcare Services, Inc., et al. v. Next Health, LLC, et al.*, No. 3:17-cv-00243 (N.D. Tex.) (the "Next Health litigation"), Compl., ECF No. 1.

On September 30, 2019, Plaintiffs sought leave to file their First Amended Complaint in the Next Health litigation, adding as individual defendants executives associated with Next Health, including Semyon Narosov and Hillman, as well as Mortazavi, Arvin Zeinali, Cary Rossel, Jeremy Rossel, and Yan Narosov (collectively, the "Executive Defendants"). *Next Health*, No. 3:17-cv-00243, Mot. for Leave to Amend, ECF No. 293. With respect to the Executive Defendants, Plaintiffs sought to add claims for fraud and fraudulent nondisclosure; conspiracy to commit fraud; fraudulent transfers; and violations of 18 U.S.C. § 1962(c). On January 7, 2020, the Court granted Plaintiffs' motion, and Plaintiffs filed their First Amended Complaint. *Next Health*, No. 3:17-cv-00243, First Am. Compl., ECF No. 348.

In July 2021, United States District Judge Ada E. Brown severed Plaintiffs' claims against the Executive Defendants, giving rise to the instant lawsuit. *Next Health*, No. 3:17-cv-00243, Order, ECF No. 613. The Second Amended Complaint filed in the Next Health litigation, *see Next Health*, No. 3:17-cv-00243, ECF No. 584, became the live pleading in this severed action. Following Judge Brown's recusal, the matter was reassigned to United States District Judge Sam A. Lindsay

who has referred the matter to the undersigned for pretrial management under 28 U.S.C. § 636(b). *See* ECF Nos. 621, 672.

After approximately four years of discovery, on August 8, 2023, this Court entered a Fifth Amended Scheduling Order setting this case for trial on a four-week docket beginning May 6, 2024. *See* ECF No. 662. Under that Scheduling Order, the discovery period closed on November 1, 2023. In view of multiple discovery motions and summary judgment motions, on March 25, 2024, the Court granted the parties' joint motion for a continuance, vacated the trial setting and pretrial deadlines, and stated that it would reset the case for trial and establish new pretrial deadlines, as necessary, following the resolution of those motions.[1] *See* ECF No. 726.

Meanwhile, on February 21, 2024, Mortazavi, Zeinali and twelve others were indicted for conspiracy to violate the Travel Act by violating the Texas Commercial Bribery Statute and conspiracy to deny patients their intangible right to honest services, all in violation of 18 U.S.C. §§ 371, 1343, 1346, 1349, and 1952; and for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). *United States v. Mortazavi, et al.*, No. 3:24-cr-00049-S (N.D. Tex.) (the "Criminal Case"). The Indictment alleges Mortazavi and Zeinali, along with other defendants, were engaged in a complex bribery, kickback, and money laundering scheme regarding pharmacies illegally paying physicians for prescriptions filled at those pharmacies.

---

[1] The pending motions have now been resolved. *See* ECF No. 756 (overruling obj. and accepting FCR on MSJs).

Criminal Case, No. 3:24-cr-00049-S, Indictment, ECF No. 1, *passim*. The government alleges Mortazavi and Zeinali committed these crimes through their respective roles at Next Health. Criminal Case, No. 3:24-cr-00049-S, Indictment, ECF No. 1.

Although the Criminal Case was originally set for trial on May 13, 2024, on February 23, 2024, the District Judge reset the Criminal Case for trial on October 6, 2025, after she concluded that it was a complex case, as set forth in 18 U.S.C. § 3161(h)(7)(B)(ii). Criminal Case, No. 3:24-cr-00049-S, Order, ECF No. 136.

On March 22, 2024, Zeinali pleaded guilty and provided his Factual Resume, in which he states that he conspired with Mortazavi to violate Texas Penal Code § 32.43, 18 U.S.C. § 1952(a)(1) and (a)(3), and 18 U.S.C. § 371. Criminal Case, No. 3:24-cr-00049-S, Factual Resume, ECF No. 114. Paragraphs 3 through 6 in Zeinali's Factual Resume focus on Mortazavi's alleged involvement with Next Health, including involvement with, among others, Defendants Hillman and Andrew Narosov, in connection with pharmacies identified in the Indictment, some of which are also identified in Plaintiffs' Second Amended Complaint in this civil matter. *See* Criminal Case, No. 3:24-cr-00049-S, Factual Resume ¶¶ 3-6, ECF No. 114. On August 29, 2024, the District Judge accepted Zeinali's plea of guilty and adjudged him guilty of Conspiracy to Violate the Travel Act Predicated Upon the Texas Commercial Bribery Statute, in violation of 18 U.S.C. § 371 (18 U.S.C. § 1952). Criminal Case, No. 3:24-cr-00049-S, Order Accepting Report and

Recommendation of the United States Magistrate Judge Concerning Plea of Guilty, ECF No. 159.

Mortazavi now "requests that this case be stayed until the Criminal Case is resolved." Mot. to Stay 15.[2] In response, Plaintiffs state that they do not "oppose a continuance of the trial in this case pending resolution of the Criminal Case." Pl.'s Resp. to Mortazavi's Mot. to Stay 2, ECF No. 729. Plaintiffs, however, place two conditions on their lack of opposition. First, Plaintiffs assert that "the Criminal Case should not be used to prevent the Court from resolving pretrial matters, including UHC's fully briefed motions for summary judgment." *Id.* Second, Plaintiffs want Mortazavi, who has already invoked his Fifth Amendment rights on all issues in this civil case, to be precluded from revising his assertion of his Fifth Amendment rights or seeking to re-open discovery. *Id.* Plaintiffs assert that:

> Mr. Mortazavi's real aim in filing this motion is not to avoid prejudice, which would be the only proper purpose for seeking a stay. He has already invoked his Fifth Amendment rights on every issue, not the least of which concern what is at issue in the Criminal Case, and so he is in no danger. Instead of being in danger there, he wishes to proceed with the Criminal Case before coming back to this case "to weigh his options" for withdrawing his Fifth Amendment rights assertion and make himself available before trial. (ECF No. 724, at 11.) But he should not be permitted to wait-and-see what happens in the Criminal Case, before inevitably moving to re-open discovery here or otherwise seeking to revise his invocation of the Fifth Amendment so as not to succumb to summary judgment.

---

[2] In the alternative to a stay, Mortazavi asks that "he be severed from this civil case and the claims asserted against him only be stayed until the Criminal Case against him is resolved." Mot. to Stay 15. He fails, however, to provide any argument or support for this alternative request. Because Mortazavi has failed to brief this issue, the Court does not address it.

*Id.* at 9 (citation omitted).

In reply, Mortazavi asserts that he "takes no position" regarding the Court's disposition of the summary judgment motions. Mortazavi's Reply 2, ECF No. 733. Mortazavi, however, states that "UHC's condition relative to Mortazavi withdrawing his assertion of his Fifth Amendment Rights is untimely urged. That issue is not before the Court." *Id.* Given Mortazavi's failure to agree to the second condition, the Court will treat the motion as opposed.

## Legal Standard

"[A] district court may stay a civil proceeding during the pendency of a parallel criminal proceeding. Such a stay contemplates 'special circumstances' and the need to avoid 'substantial and irreparable prejudice.'" *United States v. Little Al,* 712 F.2d 133, 136 (5th Cir. 1983) (citing *SEC v. First Fin. Grp. of Tex., Inc.,* 659 F.2d 660, 668 (5th Cir. Oct. 1981)). "The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation." *Cigna Healthcare of Texas, Inc. v. VCare Health Servs., PLLC,* 2020 WL 1640338, at *2 (N.D. Tex. Apr. 2, 2020) (Fitzwater, J.) (quoting *In re Ramu Corp.,* 903 F.2d 312, 318 (5th Cir. 1990)) (citation omitted).

District courts consider several factors in determining whether "special circumstances" warrant a stay, including:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests

6

of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

*Id.* at *2 (citations omitted).

## Analysis

### 1. *Extent of Overlap Between Issues in the Criminal and Civil Cases*

The first factor is the extent to which the issues in the parallel criminal case overlap with those in the present case, because self-incrimination is more likely if there is significant overlap. *See Cigna Healthcare,* 2020 WL 1640338, at *2 ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues. If there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay.") (cleaned up) (citations omitted). The defendant has the burden to prove the civil and criminal proceedings will overlap to such an extent "that either (1) he cannot protect himself in the civil proceeding by selectively invoking his Fifth Amendment privilege, or (2) effective defense of both [the criminal and civil cases] is impossible." *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 401 (S.D. Tex. 2009). In determining whether issues are related, courts impose a "common-sense, fact-bound analysis." *In re Ramu Corp.*, 903 F.2d at 319.

Mortazavi contends that this first factor weighs in favor of a stay because "the issues in the Criminal Case significantly overlap – if they do not mirror identically – the issues presented in the civil case." Mot. to Stay 11. Plaintiffs respond that, while the criminal and civil proceedings have factual overlap with

respect to the Indictment alleging that Mortazavi paid kickbacks to physicians to induce referrals of prescriptions to pharmacies, which overlaps with the "Pharmacy Kickback Scheme" alleged in the Second Amended Complaint, the proceedings in the civil case are "far broader." *Id.* at 6. Specifically, Plaintiffs assert, in the civil case, the "ADAR Group Scheme" involved a very different type of fraud whereby Mortazavi caused the submission of claims to UHC for laboratory services that falsely represented that those services had been ordered by licensed medical providers; the "Co-pay Scheme" is also different as it involves false representations that patient cost-share obligations had been collected for prescriptions; and the "Laboratory Kickback Scheme" is different, as it involves different medical services (laboratory not prescriptions), different Next Health billing entities (labs not pharmacies), different referring medical providers, different financial arrangements (syndicated shell labs, not Class G pharmacies), different misrepresentations and material omissions, different claims, and different dollars in damages. *Id.* In addition, Plaintiffs point out that the government is a party to the criminal case but not the civil case; and that there is minimal overlap of the parties. *Id.*

Upon review, the Court finds that there is some overlap between the criminal case against Mortazavi and this civil suit. The government indicted Mortazavi for paying kickbacks to physicians to induce referrals of prescriptions to pharmacies, which Plaintiffs concede factually overlaps with the Pharmacy Kickback Scheme. But, for the reasons stated by Plaintiffs in their response brief, *supra*, the civil suit

8

is far broader. The Indictment does not encompass the alleged ADAR Group Scheme, Co-pay Scheme, or Laboratory Kickback Scheme. Moreover, Plaintiffs are not a party to the criminal case. *See, e.g., Alcala,* 625 F. Supp. 2d at 402 ("[T]he potential for prejudice to a criminal defense is diminished where private parties, and not the government, are the plaintiffs in the civil action." (citation omitted)).

For these reasons, the Court concludes that the overlap between the civil action and the Criminal Case is insufficient to warrant a stay.

Even assuming substantial overlap, the weight of this factor is greatly reduced because the record includes no indication that there is a concern that Plaintiffs may use civil discovery in this case to circumvent limitations on discovery in any criminal proceedings. In fact, discovery in this case closed on November 1, 2023, more than five months before Mortazavi filed his Motion to Stay. Mortazavi has been deposed by Plaintiffs in this case and already has invoked his Fifth Amendment right against self-incrimination as to all issues. As a result, any stay would not protect Mortazavi from being forced to choose between the risks of incriminating himself by testifying or of an adverse inference from his invocation of the Fifth Amendment. Mortazavi has already made his choice.

### 2. *Status of the Criminal Case*

"A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct." *Cigna Healthcare,* 2020 WL 1640338, at *3 (citation omitted). This is for two reasons: "first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has

9

issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *Librado v. M.S. Carriers, Inc.*, 2002 WL 31495988, at *2 (N.D. Tex. Nov. 5, 2002) (Fitzwater, J.).

Here, as Plaintiffs note, "Mr. Mortazavi was recently indicted, but there is no danger of him making incriminating statements here that would impact his defense of the Criminal Case. For the last year, he has been invoking his Fifth Amendment rights—concerning not only the Pharmacy Kickback Scheme, but as to every aspect of his involvement with Next Health." Pls.' Resp. Br. 7.

Further, the District Judge reset the Criminal Case for trial on October 6, 2025, after she concluded that it was a complex case, as set forth in 18 U.S.C. § 3161(h)(7)(B)(ii). Criminal Case, No. 3:24-cr-00049-S, Order, ECF No. 136. Thus, the Criminal Case will not be quickly resolved due to Speedy Trial Act considerations.

Because Mortazavi has been indicted, the Court concludes that this factor weighs in favor of a stay. But, under the unique circumstances presented, where Mortazavi has already invoked his Fifth Amendment privilege in this civil matter and the criminal case has been re-set for trial in October 2025, the weight of this factor is greatly reduced.

### 3. Whether Plaintiffs' Private Interests Outweigh the Prejudice Caused by a Delay

10

The Court also weighs Plaintiffs' private interests in proceeding expeditiously against the prejudice that will be caused by the delay that will result from the stay. Mortazavi argues that Plaintiffs "will not be unduly prejudiced by further delay. UHC has been on notice of its claims since as early as July 15, 2015." Mot. to Stay 13 (citation omitted). Additionally, he asserts that "a further continuance of this trial is likely given the subject matter of Mortazavi's motion to compel, motion requesting hearing thereon, and motion to extend the discovery period, all of which remain undecided along with other discovery-related motions and the summary-judgment motions." *Id.*

In response, Plaintiffs argue that they have a private interest in proceeding expeditiously and, in addition to delay, were the Court to grant Mortazavi's request for a stay, (1) "there is a high chance that he will be depleted of resources to pay UHC its damages, especially those flowing from the fraud schemes which are not at issue in the Criminal Case"; and (2) "it would eviscerate UHC's seven-year diligence and investment in procuring recoupment for its members that Mr. Mortazavi defrauded in other ways." Pls.' Resp. Br. 7-8.

"Generally, a civil plaintiff has an interest in the prompt resolution of his claims." *Cigna Healthcare,* 2020 WL 1640338, at *4 (cleaned up) (citation omitted). But "[n]ormally, in evaluating the plaintiff's burden resulting from the stay, courts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim." *Walker v. Wilburn,* 2015 WL 5873392, at *7 (N.D. Tex. Oct. 5, 2015) (Fitzwater, J.). For instance, "[t]he threat

11

of the dissipation of assets during a stay has been recognized as a substantial burden for plaintiffs." *Walker*, 2015 WL 5873392, at *8.

While the Court recognizes Plaintiffs' legitimate concern regarding further delay and the risk of dissipation of assets, it must also consider that the trial date in this matter was vacated to allow for resolution of numerous pending motions and has yet to be reset. Under these unique circumstances, the Court concludes that this factor does not favor either party.

### 4. Mortazavi's Private Interest

The Court next considers Mortazavi's private interest in securing a stay and the burden, if any, he would incur were a stay denied. Mortazavi asserts that "continuing with the civil case after the Government filed the Indictment on February 21, 2024[,] will cause substantial and irreparable prejudice to [him]." Mot. to Stay 13. In support, Mortazavi states that "[a]lthough the Government did not initiate the civil case, [he] has little doubt that UHC made a criminal referral and is sharing with the Government the information it learns in this case." *Id.* He further maintains that "UHC has resisted producing its communications with the government." *Id.*

In response, Plaintiffs contend Mortazavi has not demonstrated any potential prejudice and that his argument is "perplexing." Pls.' Resp. Br. 8. Plaintiffs state

> it is unclear why UHC's communications to the government about Mr. Mortazavi, if any, would prejudice his defense in the Criminal Case or this case—or bear at all on the substance of UHC's claims. Mr.

12

> Mortazavi also hints that, were this case to proceed, it could result in exposing the theory of his defense to the government, thereby prejudicing him in the Criminal Case. (ECF No. 724, at 13.) But given that he has already invoked the Fifth Amendment here and discovery is closed, there is no risk of a change in the status quo.

*Id.*

Given Mortazavi's invocation of his Fifth Amendment privilege in this matter and the fact that discovery has closed, the Court agrees with Plaintiffs that Mortazavi's argument is unpersuasive. In addition, the Court recently ordered Plaintiffs to produce communications with the government about him, if any, following resolution of the motions for summary judgment. Order, ECF No. 728. Accordingly, this factor is neutral.

### 5. *Court's Interest*

The interest of the Court is also considered when determining whether to grant a motion to stay. *See Walker*, 2015 WL 5873392, at *9; *Librado*, 2002 WL 31495988, at *3. On the one hand, "courts have a strong interest in moving matters expeditiously through the judicial system." *S.E.C. v. Offill*, 2022 WL 17742624, at *4 (N.D. Tex. Dec. 16, 2022) (Ramirez, J.). On the other hand, granting a stay "serves the interests of the courts, because conducting the criminal proceedings first advances judicial economy." *Id.* (citation omitted). "Resolution of the criminal case may increase prospects for settlement of the civil case. Due to differences in the standards of proof between civil and criminal prosecutions, the possibility always exists for a collateral estoppel or res judicata effect on some or all of the

overlapping issues." *Id.* (citing Pollack, Parallel Civil & Criminal Proceedings, 129 F.R.D. 201, 204 (1990)).

Mortazavi contends that a stay could favor judicial economy because resolution of the Criminal Case may increase prospects for settlement of the civil case and "the possibility exists for a collateral estoppel or res judicata effect on some or all of the overlapping issues." Mot. to Stay 14. Plaintiffs respond that, "[s]etting aside that res judicata is clearly not possible without identical claims or parties in the two cases, the outcome of the Criminal Case will have no effect, preclusive or otherwise, on most of the fraud claims at issue here." Pls.' Resp. Br. 8-9.

On balance, the Court concludes that its interests do not weigh for or against a stay.

### 6. *Public Interest*

"The public has an interest in the just and constitutional resolution of disputes with minimal delay." *Cigna Healthcare,* 2020 WL 1640338, at *6; *see also Alcala,* 625 F. Supp. 2d at 407 ("The public has an interest in the resolution of disputes with minimal delay, but only to the extent that the integrity of the defendant's rights can be maintained."). As previously explained, Mortazavi has already invoked the Fifth Amendment and remained silent on every issue in this case. Thus, there is no risk to Mr. Mortazavi's rights if the civil case is not stayed.

On balance, the Court concludes that this factor does not favor either party.

## Conclusion

14

For the reasons explained, and having considered the parties' legal arguments and analyzed the six factors set forth above, the Court finds that Mortazavi has not met his burden of showing that a stay is warranted in this case. Accordingly, Mortazavi's Motion to Stay, ECF No. 724, is **denied**.[3]

**SO ORDERED.**

October 8, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

---

[3] "Because motions to stay are considered pretrial matters, they are within the statutory authority of matters that a magistrate judge may 'hear and determine.'" *S.E.C. v. Offill,* 2022 WL 17742624, at *5, n.5 (N.D. Tex. Dec. 16, 2022)(Ramirez, J.) (cleaned up) (citation omitted); *see also S.E.C. v. Kornman,* 2006 WL 148733, at *2 (N.D. Tex. Jan. 18, 2006) (Lindsay, J.) (noting that the government's motion to intervene and motion for stay of proceedings were nondispositive motions).