IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED HEALTHCARE SERVICES, INC. and UNITED HEALTHCARE COMPANY, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 3:21-cv-1547-L |
| AMIR MORTAZAVI and SEMYON NAROSOV, | § § § | |
| Defendants.[1] | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Amir Mortazavi's Motion for Leave to Withdraw His Prior Assertion of Fifth Amendment Rights and Re-Open His Deposition to Testify Fully, and for Expedited Review, filed March 23, 2026 (Doc. 805) ("Motion"). After careful consideration of the Motion, response, reply, record, and applicable law, the Court **grants** the Motion.

### I.     Background Facts and Procedural History[2]

In 2016, the Government obtained an indictment against two majority owners of Next Health LLC—Defendants Semyon Narosov and Andrew Hillman—charging them with operating a kickback scheme at Forest Park Medical Center Dallas. *See United States of America v. Alan*

---

[1] Amir Mortazavi and Semyon Narosov are the sole remaining Defendants, and Mr. Narosov has conceded liability and only contests damages. *See* Resp. to Pls.' Request for Entry of Def. J. (Doc. 765). The parties have notified the undersigned that they "have agreed to file a Joint Stipulation of Dismissal as to all claims asserted against Yan Narosov." Joint Status Report 1 (Doc. 812). The deadline for these parties to file a stipulation or notice of dismissal, or an agreed motion to dismiss, is August 12, 2026. Order 1 (Doc. 813).

[2] The background facts and procedural history are set forth in detail in prior opinions. *See, e.g.*, *United Healthcare Servs., Inc. v. Rossel*, 2024 WL 4448671, at *1 (N.D. Tex. Oct. 8, 2024), *aff'd*, 2025 WL 1572735 (N.D. Tex. June 4, 2025); *United Healthcare Servs., Inc. v. Rossel*, 2024 WL 4451761, at *1 (N.D. Tex. July 23, 2024, *adopted by*, 2024 WL 4326539 (N.D. Tex. Sept. 27, 2024). The court, therefore, recounts only the background facts and procedural history necessary to understand the present decision.

*Andrew Beauchamp, et al.*, No. 3:16-cr-0516 (N.D. Tex). On January 26, 2017, Plaintiffs—entities that administer and insure health and welfare benefit plans—sued Next Health LLC and affiliated entities (collectively, "Next Health"), asserting a variety of claims related to a multi-million-dollar healthcare fraud involving alleged false claims seeking payment for lab tests and prescription medications. *See United Healthcare Services, Inc., et al. v. Next Health, LLC, et al.*, No. 3:17-cv-00243 (N.D. Tex.) (the "Next Health litigation"). In the First Amended Complaint, Plaintiffs (i) added as individual defendants certain executives associated with Next Health, including Semyon Narosov and Andrew Hillman, as well as Amir Mortazavi, Arvin Zeinali, Cary Rossel, Jeremy Rossel, and Yan Narosov (collectively, the "Executive Defendants"); and (ii) added claims for fraud and fraudulent nondisclosure; conspiracy to commit fraud; fraudulent transfers; and violations of 18 U.S.C. § 1962(c). *Next Health*, No. 3:17-cv-00243, First Am. Compl. (Doc. 348).

In July 2021, United States District Judge Ada E. Brown severed Plaintiffs' claims against the Executive Defendants, giving rise to the instant lawsuit. *Next Health*, No. 3:17-cv-00243, Order (Doc. 613). The Second Amended Complaint filed in the Next Health litigation—*see Next Health*, No. 3:17-cv-00243 (Doc. 584)—became the live pleading in this severed action. Following Judge Brown's recusal, the matter was reassigned to the undersigned.

Discovery progressed for approximately four years and closed on November 1, 2023. *See* Fifth Am. Sch. Order ¶ 6 (Doc. 662). Beginning in 2023, upon the advice of counsel, Mr. Mortazavi began to invoke his Fifth Amendment privilege against self-incrimination in response to interrogatories and deposition questions. *See, e.g.*, 3/27/23 Resps. to Interrogs. and RFAs (Doc. 682-3 at 216-18); 9/8/23 Resps. to Interrogs. and RFAs (Doc. 682-3 at 244-51); 6/28/23 Dep. Tr. (Doc. 682-4 at 360-90).

On February 21, 2024, Mr. Mortazavi, Mr. Zeinali and twelve others were indicted for conspiracy to violate the Travel Act by violating the Texas Commercial Bribery Statute and conspiracy to deny patients their intangible right to honest services, all in violation of 18 U.S.C. §§ 371, 1343, 1346, 1349, and 1952; and for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). *United States v. Mortazavi, et al.*, No. 3:24-cr-00049-S (N.D. Tex.) (the "Criminal Case"). The Indictment alleged Messrs. Mortazavi and Zeinali, along with other defendants, were engaged in a complex bribery, kickback, and money laundering scheme regarding pharmacies illegally paying physicians for prescriptions filled at those pharmacies. Criminal Case, No. 3:24-cr-00049-S, Indictment, Doc. 1, *passim*. The Government alleged the defendants committed these crimes through their respective roles at Next Health. Criminal Case, No. 3:24-cr-00049-S, Indictment (Doc. 1).

Although originally set for trial on May 13, 2024, on February 23, 2024, United States District Judge Karen Gren Scholer reset the Criminal Case for trial on October 6, 2025, after she concluded that it was a complex case, as set forth in 18 U.S.C. § 3161(h)(7)(B)(ii). Criminal Case, No. 3:24-cr-00049-S, Order (Doc. 136). On March 22, 2024, Mr. Zeinali pleaded guilty and provided his Factual Resume, in which he stated that he conspired with Mr. Mortazavi in connection with the healthcare fraud scheme. Criminal Case, No. 3:24-cr-00049-S, Factual Resume (Doc. 114).

Following Mr. Zeinali's plea, on March 31, 2024, Mr. Mortazavi filed a motion "request[ing] that this case be stayed until the Criminal Case is resolved." Mot. to Stay 15 (Doc. 724). In support, Mr. Mortazavi asserted, among other things, that given the significant overlap between the issues in the criminal investigation and in this civil case, proceeding without a stay would be prejudicial. *Id.* at 10-11. In response, Plaintiffs did not oppose the continuance of the

Memorandum Opinion and Order – Page 3

trial pending resolution of the Criminal Case but placed two conditions on their lack of opposition: (1) that "the Criminal Case should not be used to prevent the Court from resolving pretrial matters, including UHC's fully briefed motions for summary judgment"; and (2) that Mr. Mortazavi, who had already invoked his Fifth Amendment rights on all issues in this civil case, be precluded from revising his assertion of his Fifth Amendment rights or seeking to reopen discovery. Pls.' Resp. 2 (Doc. 729).

After concluding that Plaintiffs' lack of opposition to the request for a stay was conditional, rather than accept those conditions, the Magistrate Judge deemed Mr. Mortazavi's Motion to Stay as opposed; and, while she agreed there was "some overlap between the criminal case against Mortazavi and this civil suit[,]" she denied the Motion to Stay because Mr. Mortazavi "has not met his burden of showing that a stay is warranted." *United Healthcare Servs., Inc. v. Rossel*, 2024 WL 4448671, at *6 (N.D. Tex. Oct. 8, 2024) (Rutherford, J.), *aff'd*, 2025 WL 1572735 (N.D. Tex. June 4, 2025) (Lindsay, J.).

In the Criminal Case, the Indictment was followed by a Superseding Information on March 31, 2025, and a Superseding Indictment on January 6, 2026. Criminal Case, No. 3:24-cr-00049-S, Superseding Information (Doc. 192); Superseding Indictment (Doc. 297). On February 4, 2026, Mr. Mortazavi and the other defendants in the Criminal Case filed a Motion to Dismiss Superseding Indictment, contending that the Superseding Indictment, which seeks to prosecute conduct that the Government alleged concluded no later than October 2019, should be dismissed "in its entirety as time-barred." Criminal Case, No. 3:24-cr-00049-S, Mot. to Dismiss Superseding Indictment and Br. in Support 7 (Doc. 323). On February 13, 2026, the Government filed a Motion to Dismiss all charges "in the interests of justice" and asked "that [the] case be closed." Criminal Case, No. 3:24-cr-00049-S, Gov't Mot. to Dismiss 1 (Doc. 325). That same day, Judge Scholer

granted the Government's Motion to Dismiss and ordered "that all charges in this case, specifically the Indictment, Superseding Information, and Superseding Indictment, are **DISMISSED**, and this case is **CLOSED**." Criminal Case, No. 3:24-cr-00049-S, Order (Doc. 326) (original capitalization and emphasis).

On the heels of Judge Scholer's February 13, 2026 Order, Mr. Mortazavi requests leave to reopen discovery in this case on a limited basis to: (i) "withdraw the prior assertion of his Fifth Amendment rights during the deposition he gave on June 28, 2023"; (ii) "re-open his deposition so that he may testify fully and substantively"; and (iii) "serve amended responses to Plaintiffs' interrogatories to withdraw the prior assertion of his Fifth Amendment rights and answer the questions fully and substantively." Mot. 2. Plaintiffs oppose the Motion because, among other reasons, Mr. Mortazavi "cannot meet the standard for withdrawing such an invocation—years after discovery has closed and after gaming the discovery process—so he should be barred from testifying at trial on the topics he shielded from discovery." Pls.' Resp. Br. 9 (Doc. 806). The Motion has been fully briefed and is ripe for disposition.

## II. Legal Standard for Invocation and Withdrawal of Fifth Amendment Privilege Against Self-Incrimination

The Fifth Amendment protects an individual from self-incrimination, in part, by affording the privilege "not to answer official questions put to him [or her] in any [ ] proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)); *see also Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 547 (5th Cir. 2012) ("As a preliminary matter, it should be noted that a party may invoke the privilege against self-incrimination in a civil proceeding.") (citation omitted); *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1086 (5th Cir. 1979) ("[I]t is clear that the Fifth Amendment would serve as a shield to

Memorandum Opinion and Order – Page 5

any party who feared that complying with discovery would expose him to a risk of self-incrimination. The fact that the privilege is raised in a civil proceeding rather than a criminal prosecution does not deprive a party of its protection.") (citations omitted). "Accordingly, a party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or [ ] produc[ing] documents." *Davis-Lynch,* 667 F.3d at 547 (citation omitted).

The Supreme Court has also emphasized that the Constitution limits "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Spevack v. Klein*, 385 U.S. 511, 515 (1967) (quoting *Griffin v. California*, 380 U.S. 609, 614 (1965)). "Given this consideration—and because all parties should have a reasonable opportunity to litigate a civil case fully—courts should seek out ways to permit 'as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege.'" *Davis-Lynch*, 667 F.3d at 547 (quoting *Wehling*, 608 F.2d at 1088) (noting that the plaintiff's assertion of his Fifth Amendment privilege during discovery did not automatically require dismissal of his libel action when another, less burdensome remedy could prevent unfairness to the defendant).

"[W]hen there are competing interests posed by an invocation of the Fifth Amendment, a court should measure 'the relative weights of the parties' competing interests with a view toward accommodating those interests, if possible.'" *Id.* (quoting *Wehling*, 608 F.2d at 1088). "Accordingly, Circuit Courts have weighed the specific facts of each case in which a civil litigant has attempted to withdraw his invocation of the Fifth Amendment privilege." *Id.*

The Fifth Circuit in *Davis-Lynch* elaborated on the factors a court should consider in evaluating "whether and under what circumstances a party may withdraw its invocation of the Fifth Amendment privilege against self-incrimination in a civil case." *Id.* at 546. Generally, a

Memorandum Opinion and Order – Page 6

litigant may withdraw a Fifth Amendment invocation, "even at a late stage in litigation," if (1) "the litigant was not using the privilege in a tactical, abusive manner," and (2) "the opposing party would not experience undue prejudice as a result." *Id.* at 548 (citation omitted). On the question of tactical use, courts examine whether a litigant appears to be "gaming the system." *Id.* (quoting *Evans v. City of Chicago*, 513 F.3d 735, 746 (7th Cir. 2008)). A good-faith invocation may be inferred when the assertion corresponds with a potential criminal probe. *Id.* (citing *Evans*, 513 F.3d at 746). By contrast, gamesmanship can be inferred when a litigant invokes the Fifth Amendment privilege "throughout the discovery process, only to withdraw his assertion in the face of a motion for summary judgment." *Id.* at 549. Courts have considered withdrawals made one week before the close of discovery as "eleventh-hour" maneuvers suggestive of abuse or gamesmanship. *Id.* With respect to prejudice, late withdrawal of the Fifth Amendment privilege may place the "opposing party at a significant disadvantage because of increased costs, delays, and the need for a new investigation." *Id.* at 548 (citations omitted).

### III.    Analysis

Following the Government's voluntary dismissal of the criminal charges against him, *supra*, Mr. Mortazavi requests leave to reopen discovery in this case on a limited basis to: (i) "withdraw the prior assertion of his Fifth Amendment rights during the deposition he gave on June 28, 2023"; (ii) "re-open his deposition so that he may testify fully and substantively"; and (iii) "serve amended responses to Plaintiffs' interrogatories to withdraw the prior assertion of his Fifth Amendment rights and answer the questions fully and substantively." Mot. 2.

In response, Plaintiffs contend, among other things, that Mr. Mortazavi "cannot meet the standard for withdrawing such an invocation—years after discovery has closed and after gaming the discovery process—so he should be barred from testifying at trial on the topics he shielded

from discovery." Pls.' Resp. Br. 9.[3] Plaintiffs also assert that, even if the court grants the Motion and allows Mr. Mortazavi to be re-deposed and to testify at trial, they are "entitled to ameliorating relief, including an adverse inference, cost and fee shifting as to that deposition, and the ability to impeach Mr. Mortazavi at trial with his prior Fifth Amendment invocation." *Id.*[4]

In reply, Mr. Mortazavi concedes that Plaintiffs may be entitled to certain remedies "to mitigate the prejudice that is inherent in this situation. In particular, Plaintiffs may be entitled to reasonable cost shifting for re-taking the original deposition." Reply 9. Further, while Mr. Mortazavi opposes any adverse inference based on his prior invocation of the Fifth Amendment, he "does not oppose Plaintiffs pointing out at trial that [he] previously invoked his Fifth Amendment rights, so long as [he] has the opportunity to fully testify on the merits and explain why he has to assert that right." *Id.* at 9-10.

To assess whether Mr. Mortazavi is attempting to abuse the judicial system or gain an unfair advantage, the court must consider the timing and circumstances under which Mr. Mortazavi seeks to withdraw his invocation of his Fifth Amendment privilege. As explained above, there are

---

[3] Plaintiffs also maintain that Mr. Mortazavi has failed to demonstrate good cause to alter the already-expired discovery deadline in the Scheduling Order. *See* Pls.' Resp. Br. 9 (citing Fed. R. Civ. P. 16(b)). Discovery closed on November 1, 2023. *See* Fifth Am. Sch. Order ¶ 6 (Doc. 662). Because the Motion does not seek to modify the discovery deadline so that Mr. Mortazavi may seek additional discovery, but solely to reopen the already-served discovery to avoid undue prejudice to Plaintiffs, the undersigned agrees with Mr. Mortazavi that Rule 16(b) is, technically, inapplicable. *See* Reply 7.

[4] Plaintiffs urge the court to interpret a prior decision of the Magistrate Judge as foreclosing Mr. Mortazavi's requested relief. *See* Pls.' Resp. Br. 9. In her Order denying Mr. Mortazavi's Motion to Stay this civil case pending the resolution of the Criminal Case, the Magistrate Judge stated in dicta that "any stay would not protect Mortazavi from being forced to choose between the risks of incriminating himself by testifying or of an adverse inference from his invocation of the Fifth Amendment. Mortazavi has already made his choice." *United Healthcare Servs., Inc. v. Rossel*, 2024 WL 4448671, at *4 (N.D. Tex. Oct. 8, 2024) (Rutherford, J.), *aff'd*, 2025 WL 1572735 (N.D. Tex. June 4, 2025) (Lindsay, J.). At the time of the Magistrate Judge's decision denying Mr. Mortazavi's Motion to Stay, the Criminal Case against Mr. Mortazavi was ongoing. The Magistrate Judge could not have anticipated the Government's voluntary dismissal of the Indictment. Given the altered posture of the case, the court **rejects** Plaintiffs' attempt to extrapolate from dicta in the Magistrate Judge's decision to foreclose the relief Mr. Mortazavi now seeks.

Memorandum Opinion and Order – Page 8

two primary inquiries that courts must address when determining whether to permit a party to withdraw a prior invocation of the Fifth Amendment—namely, "a party may withdraw its assertion of the Fifth Amendment privilege, even at a late stage in litigation, if circumstances indicate that (1) the litigant was not using the privilege in a tactical, abusive manner, and (2) the opposing party would not experience undue prejudice as a result." *Davis-Lynch*, 667 F.3d at 548 (citation omitted).

This case is administratively closed per the court's order of June 4, 2025. Order (Doc. 787). On June 24, 2025, after numerous and prolonged discovery disputes, the court set this matter for trial on its four-week docket beginning August 3, 2026. Sixth Am. Sch. Order ¶ 1 (Doc. 791). On June 22, 2026, the court granted Mr. Mortazavi's Unopposed Motion to Continue the Trial Setting and to Enter an Amended Scheduling Order, and vacated the August 2026 trial setting, the July 28, 2026 pretrial conference, and all pretrial deadlines in the Sixth Amended Scheduling Order (with the exception of the deadline for a settlement conference). Order (Doc. 811). The court stated that "[a]fter ruling on Mr. Mortazavi's pending opposed Motion for Leave to Withdraw his Prior Fifth Amendment Assertion and Re-Open his Deposition, the court, as necessary, will enter an amended scheduling order." *Id.* at 1-2.

This action had been pending for approximately five years when, on March 23, 2026, long after discovery had already closed, Mr. Mortazavi filed his request to reopen discovery to withdraw his Fifth Amendment privilege. The record reflects that, within weeks of the Government's motion to voluntarily dismiss the Indictment, the Superseding Information, and the Superseding Indictment, and Judge Scholer's Order granting the Government's request, Mr. Mortazavi filed the instant Moton. In addition, Plaintiffs do not contest that, prior to filing the Motion on March 23, 2026, Mr. Mortazavi conferred with opposing counsel for several weeks in the hopes of reaching an agreement. *See* Mot. 3; Reply 7-8 and note 3.

Memorandum Opinion and Order – Page 9

After considering the particular facts and circumstances in this case, the court is satisfied that Mr. Mortazavi's initial invocation of his Fifth Amendment privilege prior to the close of discovery in 2023 and subsequent request to reopen discovery to withdraw his Fifth Amendment protections were not done for the purpose of abusing the judicial system or to obtain a tactical and unfair advantage. The unusual facts and timing of events in this matter weigh against Plaintiffs' argument that Mr. Mortazavi's motivation was to gain an unfair advantage in the case. A review of the timeline suggests otherwise and supports Mr. Mortazavi's contention that, when he asserted his Fifth Amendment privilege in response to discovery and during his deposition on advice of counsel, "he was concerned about being targeted by the Government in connection with Next Health. His fears were well-founded, as he was indicted around eight months later." Mot. 6. Once the Government voluntarily dismissed the Indictment, the Superseding Information, and the Superseding Indictment, he sought to withdraw his invocation of his Fifth Amendment privilege in this matter without undue delay. Under these circumstances, the court does not find that Mr. Mortazavi acted in bad faith or attempted to manipulate the discovery process through his initial assertion or subsequent request to withdraw the privilege. *See Davis-Lynch*, 667 F.3d at 548 ("The timing and circumstances under which a litigant withdraws the privilege are relevant factors in considering whether a litigant is attempting to abuse or gain some unfair advantage."); *id.* at 548 (discussing case permitting parties to withdraw Fifth Amendment invocations because withdrawal was done around the time the criminal prosecution was ending) (citing *Evans*, 513 F.3d at 746).

The more difficult issue presented by the Motion concerns the prejudice to Plaintiffs and the appropriate relief to alleviate the prejudice. Given the timing of Mr. Mortazavi's request, decidedly late in these proceedings, his invocation of privilege has disrupted the process. While additional discovery will prejudice Plaintiffs with increased costs and delays, there is no other

Memorandum Opinion and Order – Page 10

means to develop the record other than allowing limited discovery to be reopened. Sanctions sought by Plaintiffs, including barring Mr. Mortazavi from testifying at trial regarding topics he shielded from discovery and an adverse inference jury-instruction, exceed what is necessary to prevent unfair prejudice to Plaintiffs. The court, therefore, rejects these sanctions proposed by Plaintiffs, but will permit a narrower remedy of ordering Mr. Mortazavi to pay all reasonable costs and attorney's fees associated with both the original deposition *and* any renewed deposition, as well as any additional attendant discovery.[5]

For these reasons, the court concludes that, as it concerns Mr. Mortazavi's request to re-open discovery to withdraw his Fifth Amendment invocation and Plaintiffs' potential prejudice, the balance of the parties' competing interests weighs in favor of permitting Mr. Mortazavi to reopen discovery in this case on a limited basis to withdraw the prior assertion of his Fifth Amendment rights; to reopen his deposition so that he may testify; and to reopen discovery to allow him to serve amended responses to Plaintiffs' interrogatories and requests for admission to withdraw the prior assertion of his Fifth Amendment rights and answer the questions fully and substantively.

## IV.    Conclusion

For the reasons stated, the court **grants** Defendant Amir Mortazavi's Motion for Leave to Withdraw His Prior Assertion of Fifth Amendment Rights and Re-Open His Deposition to Testify Fully, and for Expedited Review (Doc. 805). The court hereby **reopens** discovery through October 9, 2026, *for the limited purpose* of allowing Mr. Mortazavi to: (1) withdraw the prior assertion of his Fifth Amendment rights; (2) reopen his deposition so that he may testify; and (3) serve amended answers to Plaintiffs' interrogatories and requests for admission to withdraw the prior assertion of

---

[5] At this juncture, the court need not reach whether to allow Plaintiffs to inform the jury at trial that Mr. Mortazavi previously invoked his Fifth Amendment rights. This issue may be raised at a later date.

Memorandum Opinion and Order – Page 11

his Fifth Amendment rights and answer the questions fully and substantively. Following this limited period of discovery, the court will issue an Amended Scheduling Order setting forth remaining pretrial deadlines as well as a trial date, including instructions for the parties to bring any potential conflicts to the undersigned's attention.

  **It is so ordered** this **16th** day of **July, 2026**.


           _____
           Sam A. Lindsay
           United States District Judge